ESTATE OF ISADORE RUBIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 848–70. Filed March 20, 1972.

*Herbert B. Lebovitz*, for the petitioner.
*John B. Franklin*, for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined a deficiency of $13,978.24 in the Federal estate tax of petitioner. Two issues are presented for our determination: (1) Whether decedent's estate is to be allowed a marital deduction under section 2056 of the Internal Revenue Code of 1954 [1] as a result of his bequest of 50 percent of his residuary estate to a testamentary trust with provisions that the trustees pay his surviving spouse a lifetime support allowance of $100 a week from trust income, with remainder over to petitioner's children; and (2) whether, in the alternative, decedent's testamentary trust support arrangement for his surviving spouse, which was made in compliance with the terms of an antenuptial agreement, can qualify as a claim deductible from his gross estate pursuant to section 2053.

All of the facts are stipulated and are found accordingly.

The decedent, Isadore Rubin, died on October 30, 1965, a naturalized citizen and a resident of Indiana, Pa. Decedent's Federal estate tax return was filed with the district director of internal revenue, Pittsburgh, Pa.

On July 1, 1960, Isadore Rubin, a widower with the intent of marrying Rose Harris, entered into an antenuptial agreement with her which provided in part as follows:

WITNESSETH:

WHEREAS it is the intention of the parties hereto to enter into a marriage contract, which marriage is shortly to be solemnized by and between said parties; and

\*          \*          \*          \*          \*          \*          \*

WHEREAS it is the intention of the intended wife to waive, relinquish and bar all her inchoate intestate and other rights or interests, either as the wife or widow of the first party, in and to any property now owned or hereafter acquired by the first party,

Now, THEREFORE, in consideration of said marriage and the covenants of Rose Harris, I. Rubin agrees to make provision in his Last Will and Testament, or otherwise, to provide for his intended wife in the event of his death, as follows:

\*          \*          \*          \*          \*          \*          \*

SECOND. The said I. Rubin does further agree that he shall make adequate provision in his Last Will and Testament, or otherwise, so that upon the happen-

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

ing of his decease, the intended wife shall receive for her support and maintenance out of the estate of the said I. Rubin, the sum of One Hundred ($100.00) Dollars per week, for and during the remainder of her natural life. The said sum of One Hundred ($100.00) Dollars shall be payable weekly or as otherwise agreed upon by the intended wife and the Executors of the estate of the said I. Rubin.

THIRD. Rose Harris covenants and agrees that said payment shall be in lieu of any and all her rights in and to the real and personal property of I. Rubin now owned or hereafter acquired, including all and any inchoate intestate rights, and rights as heir of any kind. She hereby releases unto I. Rubin, his heirs, personal representatives and assigns forever all of her interest, rights and claims in and to said property of every kind and nature.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have affixed their hands and seals the day and year first above written.

_____ [SEAL]
I. RUBIN

_____ [SEAL]
ROSE HARRIS

Witness:

_____

_____

At the time the agreement was executed by Rose Harris, she had full knowledge of decedent's personal net worth, which amounted to approximately $200,000.

The decedent and Rose Harris were married on July 22, 1960, at which time they were 67 and 55 years of age, respectively. Following their marriage, the couple resided in Indiana, Pa., until Isadore Rubin's death in 1965.

Prior to his death, on March 13, 1964, decedent executed his last will and testament. The will provided, in part:

THIRD: All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situated and located, I do hereby give, devise and bequeath as follows:

a. Fifty (50%) percent to my sons, SAMUEL K. RUBIN, IRVIN RUBIN and NORMAN RUBIN, their heirs and assigns forever, share and share alike.

b. The remaining Fifty (50%) percent of my residuary estate, I do hereby give, devise and bequeath to my sons, SAMUEL K. RUBIN, IRVIN RUBIN and NORMAN RUBIN, in trust, to hold, invest and reinvest the same, to collect the income therefrom and to pay out of the income, or principal amount thereof if necessary, the sum of One Hundred ($100.00) Dollare [sic] per week to my wife, Rose K. Rubin, for her support and maintenance, for and during the remainder of her natural life. This provision is also made in compliance with the hereinabove designated Antenuptial Agreement. Upon the death of my wife, Rose K. Rubin, I give, devise and bequeath the principal of the said trust together with any income remaining therein, unto my sons, Samuel K. Rubin, Irvin Rubin and Norman Rubin, their heirs and assigns forever, share and share alike.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

EIGHTH: In the event my wife, Rose K. Rubin, dies before me, then I give, devise and bequeath my entire estate, real, personal and mixed, and wheresoever situated and located, unto my sons, SAMUEL K. RUBIN, IRVIN RUBIN and NORMAN RUBIN, their heirs and assigns forever, share and share alike.

\* \* \* \* \* \* \*

In WITNESS WHEREOF, I, the undersigned Testator above named, have hereunto set my hand, the 13th day of March, in the year of our Lord one thousand nine hundred and sixty [sic] (1964).

(S) Isador Rubin [SEAL]
ISADOR RUBIN

Subsequent to his death, decedent's last will and testament was probated in the Orphans' Court of Indiana County, Pa., and letters testamentary were issued to the decedent's three sons (Samuel K. Rubin, Irvin Rubin, and Norman Rubin) on November 9, 1965. The decedent's executors filed a Federal estate tax return on January 30, 1967.

On Schedule M of the estate tax return (Bequests, Etc., to Surviving Spouse (Marital Deduction)) the following property interests were described as allegedly passing to decedent's surviving spouse:

| | |
|---|---|
| 1. Family exemption | $1,000.00 |
| 2. Real estate owned by decedent and his wife as tenants by the entirety | 35,500.00 |
| 3. 50 percent of decedent's residuary estate in trust for his wife pursuant to the antenuptial agreement | 64,655.72 |
| Total | 101,155.72 |

In computing the taxable estate petitioner claimed a marital deduction in the amount of $92,676.47. The claimed deduction was equal to one-half the decedent's adjusted gross estate and therefore was the maximum amount allowable as a marital deduction.

Respondent determined that items 1 and 3 above did not qualify for the marital deduction on the ground that both items constituted nondeductible terminable interests. Accordingly, respondent determined that the taxable estate should be increased by $57,176.47, the difference between the claimed deduction and $35,500 which concededly qualified for the marital deduction.[2]

In its petition petitioner cites as error respondent's determination that a marital deduction in the amount of $57,176.47 is not allowable, and, alternatively, that respondent erred in not allowing as a deductible claim against the estate the commuted value of the surviving spouse's life interest in the trust. Petitioner has not assigned error to

---

[2] This figure is determined as follows:

| | |
|---|---|
| Claimed marital deduction | $92,676.47 |
| Less allowable marital deduction | 35,500.00 |
| Increase in decedent's estate | 57,176.47 |

the respondent's determination that the $1,000 family exemption does not qualify for the marital deduction.

To determine whether Rose Rubin's interest in the trust qualifies for the marital deduction we must look to section 2056 of the Code. Subsection (a) of that section provides, in part, that for purposes of the estate tax the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the gross estate the value of any interest in property which passes or has passed from decedent to his surviving spouse. Subsection (b) provides:

(2) GENERAL RULE.—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

(A) if an interest in such property passes or has passed (for less than an adequate and full consideration * * *) from the decedent to any person other than such surviving spouse * * *; and

(B) if by reason of such passing such person * * * may possess or enjoy such part of such property after such termination or failure of the interest so passing to the surviving spouse;

The latter provision has been referred to as the "terminable interest rule" and will be so referred to herein.

It is clear that Rose's interest in the trust does not qualify for the marital deduction under the above provisions. Upon Rose's death her interest in the trust will terminate and the property in the trust will pass from the decedent to Isadore's sons, who will thereafter have absolute ownership of their respective shares of the property to possess and enjoy as they please.

Petitioner claims, however, the present worth of a life income interest can qualify for the marital deduction under section 2056(b)(5), citing *Gelb* v. *Commissioner*, 298 F. 2d 544 (C.A. 2, 1962), and *Citizens National Bank of Evansville* v. *United States*, 359 F.2d 817 (C.A. 7, 1966), in support thereof. Section 2056(b)(5) [3] provides generally that in the case of an interest in property passing from the decedent, if

---

[3] Sec. 2056(b)(5) reads as follows:

(5) * * * In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

(A) the interest of such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

(B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable at least annually, with the power in the spouse, exercisable by such spouse alone and in all events, to appoint the entire interest or such specific portion to herself or her estate, such interest in property so passing will, generally speaking, qualify for the marital deduction.

It is clear that Rose's life income interest in the trust does not qualify for the marital deduction under this provision. Under the terms of Isadore's will Rose is not entitled to all the income from the entire trust or from any specific portion thereof; she is entitled to receive $100 per week for life from the trust. This is to be paid from any income of the trust, or from the corpus if the income is not sufficient, but any income in excess of enough to pay Rose $100 per week would be accumulated and distributed to the sons on Rose's death.

Furthermore, Rose has no power to appoint the entire or any specific portion of the interest passing to her under decedent's will to herself or to her estate. The will is silent as to any power of Rose to appoint any part of the trust property from whence she derives the life income; in fact, the will itself directs that it shall be distributed to the sons on Rose's death. And the fact that the principal of the trust could be invaded if necessary to provide Rose with $100 per week does not expand her life income interest to include a power of appointment over the trust principal. The trustees and not Rose had administrative control over the trust, see *Estate of Schildkraut* v. *Commissioner*, 368 F.2d 40 (C.A. 2, 1966) ; *United States* v. *First Nat. Trust & Sav. Bank of San Diego*, 335 F.2d 107 (C.A. 9, 1964) ; and the power to invade principal was not exercisable "in all events" but only if necessary to provide Rose with the specified monthly payments. In addition there are numerous cases that have held a widow's power to consume is not broad enough to allow her to appoint the corpus to herself as the owner, even though there are only limited restraints on her control over the property. E.g., *United States* v. *First Nat. Trust & Sav. Bank of San Diego*, *supra; May's Estate* v. *Commissioner*, 283 F.2d 853 (C.A. 2, 1960) ; *Pipe's Estate* v. *Commissioner*, 241 F.2d 210 (C.A. 2, 1957). Pennsylvania law is in accord with these cases, *Chestnut* v. *Chestnut*, 300 Pa. 146, 151 Atl. 339 (1930), as are the Federal court decisions from the Third Circuit; *Hoffman* v. *McGinnes*, 277 F.2d 598 (C.A. 3, 1960) ; *Commissioner* v. *Ellis' Estate*, 252 F.2d 109 (C.A. 3, 1958). Where the right to consumption of trust principal is limited, as it is in this case, there is no general power of appointment.

Suffice it to point out that in both *Gelb* and *Citizens National Bank of Evansville*, relied upon by petitioner, the surviving spouses had a power of appointment, which Rose does not have here. We conclude

that Rose's interest in the trust does not qualify for the marital deduction.

Petitioner's alternative argument, that the commuted value of the support and maintenance payments to decedent's wife are deductible from the gross estate as claims against the estate under section 2053 [4] is also untenable. For the value of those payments to be deductible, being founded on a promise or agreement, they must have been contracted for "an adequate and full consideration in money or money's worth" as required by section 2053 (c) (1) (A). The payments involved do not meet that requirement under Federal law.

While it may be true that under Pennsylvania law the widow who is to receive payments under a decedent's will precisely in the amounts provided for in an antenuptial agreement is a creditor of the decedent's estate rather than a legatee under the will, see *In re Estate of Zeitchick*, 426 Pa. 171, 231 A.2d 131 (1967) ; *In re Coane's Estate*, 310 Pa. 138, 165 Atl. 2 (1933) ; this is not sufficient to meet the requirements of section 2053 (c) (1) (A). Although the terms of an instrument and applicable State law must be considered to determine the nature of the interests created, the Federal revenue laws determine whether the interest or rights that have been created are subject to the Federal estate tax or may be deducted in arriving at the taxable estate for Federal estate tax purposes. *Helvering* v. *Stuart*, 317 U.S. 154 (1942) ; *Estate of Wilhelmina L. Benjamin*, 44 T.C. 598 (1965).

Section 2053 (e) refers to section 2043 (b) for provisions that relinquishment of marital rights will not be deemed a consideration in money or money's worth. Section 2043 (b) provides as follows:

(b) For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy,

---

[4] The pertinent parts of sec. 2053 are as follows :

SEC. 2053(a). GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

(1) for funeral expenses,
(2) for administration expenses,
(3) for claims against the estate, and
(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate, as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

\* \* \* \* \* \* \*

(c) LIMITATIONS.—
(1) LIMITATIONS APPLICABLE TO SUBSECTIONS (a) and (b)—
(A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth ; except that in any case in which any such claim is founded on a promise or agreement of the decedent to make a contribution or gift to or for the use of any donee described in section 2055 for the purposes specified therein, the deduction for such claims shall not be so limited, but shall be limited to the extent that it would be allowable as a deduction under section 2055 if such promise or agreement constituted a bequest.

or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth." [5]

The applicability of section 2043(b) of the 1954 Code and its predecessor, section 812(b) of the 1939 Code, has been both expanded and limited by various court decisions and revenue rulings since the provisions therein were first enacted as section 804 of the Revenue Act of 1932. For example, in *Merrill* v. *Fahs*, 324 U.S. 308, it was deemed to be incorporated into the gift tax law even though no such provision appeared in the gift tax statute; in *Harris* v. *Commissioner*, 340 U.S. 106, it was held not to apply in a gift tax case where the relinquishment of marital rights in property was founded in a settlement agreement incident to a divorce, which theory was extended into the estate tax field, at least with respect to claims against an estate in *Estate of Myles C. Watson*, 20 T.C. 386, affd. 216 F.2d 941 (C.A. 2, 1954); and in E.T. 19, 1946–2 C.B. 166, as updated and restated in Rev. Rul. 68–379, 1968–2 C.B. 414, the Commissioner of Internal Revenue has recognized that the relinquishment by a wife of "support rights," as contrasted with "inheritance rights" in an agreement incident to divorce constitutes a consideration in money or money's worth. Extensive discussions of the cases in which and theories upon which these extensions and limitations on the applicability of section 2043(b) have been made appear in two rather recent opinions of this Court, see *Estate of Hubert Keller*, 44 T.C. 851, and *Estate of Robert Rodger Glen*, 45 T.C. 323. There is no need to repeat those discussions here because the facts in this case appear to represent a classic example of when section 2043(b) is applicable.

The purpose for the enactment of the provisions contained in section 2043(b) "was to eliminate a particular form of estate tax avoidance which involved the contractual conversion of a wife's dower (or other property rights she may have as *surviving spouse*) into a *deductible claim* against the gross estate." *Estate of Robert Rodger Glen, supra* at 333. Without intending any criticism of either the reason or motive of Isadore and Rose in entering into the antenuptial agreement here, if the value of Rose's payments may be deducted as a claim against Rubin's estate, the agreement would accomplish the very thing section 2043(b) is designed to prevent. Furthermore, the foundation for Rose's "claim" fits it squarely into the language of sections 2053(c)(1) (A) and 2043(b).

There can be no question that the payments to Rose Rubin were founded on a promise or agreement; the antenuptial agreement. Thus

---

[5] The rights mentioned in subsection (b) are often referred to as "inheritance rights" and will be so referred to herein.

any deduction for the value thereof as a claim against the estate is limited by section 2053(c)(1)(A) to the extent that it was contracted bona fide and for an adequate consideration in money or money's worth. Inasmuch as section 2043(b) provides that relinquishment of dower or curtesy or of other marital rights in the decedent's property or estate shall not be considered to any extent consideration "in money or money's worth," we must determine just what Rose gave as consideration for her stipend. Petitioner argues that Rose relinquished her support rights, while respondent urges that she surrendered only her inheritance rights.

The antenuptial agreement first relates the intention of the parties to get married and then recites that it is the intention of Rose to waive, relinquish, and bar all her inchoate intestate and other rights or interests, either as wife or widow of decedent, in property then owned or thereafter acquired by decedent. Then, in consideration of the marriage and the covenants of Rose, decedent agreed to make the provision in his will, which he did make, "to provide for his intended wife in the event of his death." The provision for Rose was to commence only on the death of decedent. As consideration Rose covenanted that said payments shall be in lieu of all her rights to the real and personal property of decedent then owned or thereafter acquired, "including all and any inchoate intestate rights, and rights as heir of any kind." She also released all her interest, rights, and claims in and to such property.

Clearly, in addition to agreeing to marry decedent, the only rights Rose surrendered were her interests in her prospective husband's estate as heir or surviving spouse. There was no mention of her rights to support during the marriage and prior to decedent's death. The rights relinquished were her rights to dower or curtesy, or a statutory estate created in lieu thereof, or other marital rights in the decedent's property or estate, which are specifically denied recognition as consideration in money or money's worth by section 2043(b), for the reasons set forth in Rev. Rul. 68–379, *supra*. Also, see *Estate of Frances R. Pollard*, 52 T.C. 741 (1969) ; *Latty* v. *Commissioner*, 62 F.2d 952 (C.A. 6, 1933).

From petitioner's brief, it appears that its argument concerns a surrender of support rights that Rose Rubin would have had as surviving spouse. The "support rights," the relinquishment of which has been held to constitute consideration in money or money's worth, are the support rights to which a wife is entitled during marriage and which she may relinquish in a settlement agreement incident to a divorce. *Estate of Louis Fabrikant*, 39 T.C. 714. They do not refer to any rights a widow may claim as a result of her husband's death.

826

Furthermore, a widow has no support rights in her husband's estate.[6] Unlike divorce or legal separation, termination of a marriage by the husband's death never leaves the widow with support rights for the simple reason that the husband as an income-producing entity is no longer in existence. Consequently, upon the death of her spouse she is entitled to either her dower rights or, depending on whether the decedent dies testate, her statutory share or her share under the decedent's will. When she receives her share of the estate, that extinguishes her interest in the husband's estate regardless of whether she is able to support herself on that amount.

In conclusion, we must find that Rose Rubin surrendered only her right to remain unmarried, plus her dower or inheritance rights in Isadore Rubin's estate, in exchange for her support allowance. Neither the promise of marriage, *Commissioner* v. *Wemyss*, 324 U.S. 303 (1945), nor a surrender of dower or other statutory interest in the decedent's estate is consideration in "money or money's worth" as prescribed by sections 2043(b) and 2053(c)(1)(A). *Empire Trust Co.* v. *Commissioner*, 94 F.2d 307 (C.A. 4, 1938); *Estate of H. B. Hundley*, 52 T.C. 495 (1969). Therefore, Rose Rubin's allowance of $100 per week from the testamentary trust created by her husband's will does not constitute a claim against the estate which is deductible under section 2053(a)(3).

*Decision will be entered for the respondent.*

---

[6] Under State law, the widow may have a statutory right to a support and maintenance allowance during the administration of her husband's estate. The maximum period for such payments is usually 1 year. Petitioner's argument does not appear to consider these support rights. However, assuming that it had, their present value would not constitute a full and adequate consideration.