*Decision will be entered under Rule 155.*

ESTATE OF ANNE B. LEACH, DECEASED, GEORGE HOWE BAILEY, JR., ADMINISTRATOR AD LITEM, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2243–81, 2244–81.     Filed June 14, 1984.

*Robert O. Rogers,* for the petitioner.
*Stuart B. Kalb,* for the respondent.

OPINION

SWIFT, *Judge*: Respondent, in statutory notices mailed to petitioner on November 7, 1980, determined a deficiency in petitioner's Federal estate tax liability of $740,937, and deficiencies in petitioner's Federal income tax liabilities of $102 for 1977 and $18,712 for 1978.

Following concessions by the parties, the issues remaining for decision are (1) whether certain annuities, payable by three charitable remainder annuity trusts, qualify for the marital deduction pursuant to section 2056 of the Internal Revenue Code,[1] and (2) if it is held that the annuities do not qualify for the marital deduction, whether any portion of the Federal estate taxes should be charged to the annuities under the Florida apportionment statute, or whether the taxes can only be charged to the corpora of the trusts making the annuity payments. The income tax adjustments made by respondent have been settled by the parties.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by this reference. The pertinent facts are summarized below.

The decedent, Anne B. Leach, died testate on February 14, 1977. She was a resident of Palm Beach County, Fla., on the date of her death. Because the interests of the co-personal representatives of the decedent's estate, Willaford R. Leach and Anne W. Henry, are in conflict with respect to the issues involved in this case, George Howe Bailey, Jr., was appointed as administrator ad litem and will be referred to as the petitioner herein.

A Federal estate tax return was timely filed on behalf of the estate with the Internal Revenue Service in Atlanta, Ga., on November 17, 1977. An amended Federal estate tax return was timely filed on September 5, 1978. Federal income tax returns were timely filed on behalf of the estate for the years 1977 and 1978, also in Atlanta, Ga.

On February 5, 1973, decedent transferred 6,969 shares of common stock of Coca-Cola Co., Inc., to Trust Company Bank, as trustee, under the Mrs. Willaford Ransom Leach Charitable

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the years at issue.

Remainder Annuity Trust. On the date of execution of the trust agreement, the assets transferred had a fair market value of $1 million. On March 15, 1975, decedent transferred an additional 10,093 shares of common stock of Coca-Cola Co., Inc., 27 shares of common stock of Coca-Cola International, Inc., and $2,641.87 in cash to Trust Company Bank, as trustee, under the Mrs. Willaford Ransom Leach Charitable Remainder Annuity Trust No. 2. The assets transferred pursuant to this trust agreement also had a fair market value of $1 million on the date of execution of the trust agreement.

As of the date of decedent's death, the sum of the fair market values of the corpora of the two trusts (hereinafter referred to collectively as the Wesleyan trust) was $2,174,202, and the sum of the fair market values of the annuities payable to decedent's surviving husband was $851,760.

The basic provisions of these two trust agreements are identical. Article One, paragraph (a) of each agreement provides—

During each taxable year of this trust, the trustee shall pay to me during my life, and upon my death, if my husband, Willaford Ransom Leach, survives me, shall pay to my husband during his life, an annuity amount equal to seven (7) percent of the initial fair market value of the assets constituting the trust, valued as of the date of execution of this trust; provided, however, that I expressly reserve the power, exercisable only by my will, to revoke and terminate the interest of my husband under this trust.

Each trust agreement provides, with respect to the ultimate disposition of trust assets that, upon the death of the survivor of decedent and her spouse, the principal balance of the trust would pass to Wesleyan College. Article One, paragraph (b) provides—

Upon the first to occur of (i) the death of the survivor of me and my husband or (ii) my death if I effectively exercise my testamentary power to revoke and terminate the interest of my husband under this trust, the trustee shall distribute all of the then principal and undistributed income of the trust, other than any amount due to me or my husband, to Wesleyan College, a Georgia corporation having its principal office in the City of Macon, Bibb County, Georgia, to be used in such manner as the trustees of Wesleyan College shall choose.

Other provisions specify that the trustee shall select as beneficiary of the above distribution a comparable organiza-

tion in the event Wesleyan College is not an organization described in section 170 of the Internal Revenue Code at the time of the distribution.

The annual annuity payments were to be made from trust income or, to the extent trust income was not sufficient, from trust principal. The trustee was given discretion over investment of trust assets. Article Seven of the trust agreements provides that "It is * * * my intention to create a charitable remainder annuity trust within the meaning of Section 664 of the Internal Revenue Code."

On March 12, 1975, decedent made a third transfer to a charitable remainder annuity trust. This transfer consisted of 136 shares of common stock of Coca-Cola International, Inc., and $2,032 in cash to Emory University, as trustee. On the date of execution of this trust agreement, the fair market value of the assets transferred was $1 million. Provisions under this trust agreement (referred to hereinafter as the Emory trust) with respect to the amount of annuity payments, termination of the husband's interest, and trustee discretion over investments are substantially similar to the Wesleyan trust. The Emory trust does contain an additional provision not found in the Wesleyan trust which provides that "No estate, inheritance or other death taxes with respect to the annuity trust shall be allocated to be recoverable from the annuity trust and the Donor agrees not to make any inconsistent direction in her Will." However, due to the insufficiency of the residuary estate, this provision failed and the estate taxes must be allocated under the Florida apportionment statute, as explained *infra*.

In her will, decedent bequeathed to a marital trust for the benefit of her surviving spouse an amount equal to 50 percent of that portion of her adjusted gross estate (less the value of property passing to her surviving spouse outside her will) which was both includable in her adjusted gross estate and allowable as a marital deduction under section 2056. Article XI of the will established the marital trust with the following language:

If my husband, WILLAFORD RANSOM LEACH, survives me, I give, devise and bequeath to my Trustees, hereinafter named, IN TRUST NEVERTHELESS, for the uses and purposes hereinafter set forth, an amount equal to fifty percent (50%) of the value of my adjusted gross estate as finally determined

for Federal Estate Tax purposes, undiminished by estate or other death taxes, either state or federal, less the aggregate value of all interests in property, if any, which pass to my husband under other provisions of this Will or which have already passed to him or for his benefit otherwise than under this Will, by operation of law, through life insurance policies, or otherwise, but only to the extent that such interests are included in determining my gross taxable estate and are allowable as a marital deduction for Federal Estate Tax purposes, it being my intention to obtain the maximum marital deduction for my estate.

With respect to the burden of paying taxes, article I of the will specifically provided that the taxes and other administration expenses would be paid out of the residue of the estate, as follows:

I direct that all debts, funeral and administration expenses, and all estate, inheritance or other death taxes, together with all interest and penalties thereon, imposed by reason of my death, by the United States or any other government or subdivision thereof, in respect of any property required to be included in my gross estate for the purposes of such taxes, whether passing under this my will or otherwise, shall be charged against the residuary portion of my estate and be paid as soon after my death as may be practicable and convenient.

The residuary of decedent's estate was bequeathed to a charitable remainder trust which was established pursuant to an agreement entered into by decedent, decedent's husband, and the Bank of Palm Beach & Trust Co., as trustee, on May 1, 1972. Ten different charitable organizations were named as beneficiaries of this trust, in varying percentages.

For the reasons explained in more detail below, respondent determined that the value of the annuities payable to decedent's surviving spouse under the Wesleyan and Emory trusts does not qualify for the marital deduction. This determination increased the portion of the residue of the probate estate passing under the marital trust, and reduced by that same amount the residue of the probate estate available for the payment of taxes, for the satisfaction of specific bequests, and for distribution to the charitable remainder trust that is the residuary beneficiary under decedent's will.

The residue of the probate estate was reduced below the amount required to satisfy taxes and specific bequests, thereby requiring, in the event that said determination is sustained, some apportionment of estate taxes to and among properties passing both outside and under the will. In making such

apportionment, respondent determined that the annuity payments under the Wesleyan and Emory trusts were exempt from apportionment under Florida Law.

Petitioner contests both of respondent's determinations. Petitioner claims that the annuities payable under the Wesleyan and Emory trusts do qualify for the marital deduction and, alternatively, if they do not so qualify, that they are not exempt from the burden of paying their share of estate taxes under the Florida apportionment statute. For the reasons explained below, we agree with respondent on both issues.

## I. Marital Deduction Issue

Section 2056(a) sets forth the general rule with respect to the marital deduction and provides for a deduction from the gross estate equal to the value of any interest in property passing to the surviving spouse. An exception to the general rule is provided in the case of an interest passing to the surviving spouse which may terminate and pass for less than full consideration to a third party who may possess or enjoy any part of the property after the surviving spouse. Sec. 2056(b).

The definition of a terminable interest is provided in sec. 20.2056(b)–(1)(b), Estate Tax Regs., as follows:

A "terminable interest" in property is an interest which will terminate or fail on the lapse of time or on the occurrence or the failure to occur of some contingency. Life estates, terms for years, *annuities*, patents and copyrights are therefore terminable interests. [Emphasis added.]

Even though an interest in property may be a terminable interest under the above definition, it will not be ineligible for the marital deduction unless the interest also may pass, for less than full consideration, to a person other than the surviving spouse and unless such other person may be in a position to possess or enjoy such interest after termination of the spouse's interest. Sec. 2056(b)(1).

Petitioner contends that the annuities payable to the surviving spouse under the Wesleyan and Emory trusts qualify for the marital deduction and are not ineligible terminable interests since the annuities, themselves, constitute "the property" which passes to the surviving spouse and since no interest in that particular property (namely, the annuities)

passes to anyone other than the surviving spouse. Based on this argument, petitioner concludes that the value of the annuities as of the date of death qualifies for the marital deduction.

Respondent contends that the annuities payable to the surviving spouse under the Wesleyan and Emory trusts do not constitute "the property," but only interests in property, that the corpora of the trusts constitute the property, and that an interest in that property may pass, for less than full and adequate consideration, from decedent to persons other than the surviving spouse (namely, the charitable remaindermen under the trusts) who may possess and enjoy that interest. Respondent therefore concludes that the surviving spouse's interests in the annuity payments under the Wesleyan and Emory trusts constitute terminable interests which do not qualify for the marital deduction.

Respondent's position is supported by a prior decision of this Court in *Estate of Rubin v. Commissioner*, 57 T.C. 817 (1972), affd. 478 F.2d 1399 (3d Cir. 1973). The facts of that case are very similar to the facts herein. The husband-decedent bequeathed in his will 50 percent of his residuary estate to a trust to pay his widow $100 per week for life from the income or, if necessary, from the corpus of the trust. These provisions were made pursuant to a prenuptial agreement in which the decedent's intended wife agreed to relinquish all property rights in property then owned or thereafter acquired by her husband. The remainder of the trust property, upon the widow's death, was bequeathed to decedent's sons. This Court concluded that the widow's interest in the trust constituted a nondeductible terminable interest pursuant to section 2056 because the corpus of the trust constituted the property and because an interest therein would pass to the sons. The Court noted as follows:

It is clear that Rose's interest in the trust does not qualify for the marital deduction under the above provisions. Upon Rose's death her interest in the trust will terminate and *the property in the trust* will pass from decedent to Isadore's sons, who will thereafter have absolute ownership of their respective shares of the property to possess and enjoy as they please. [57 T.C. at 821; emphasis added.]

The Fourth Circuit reached the same result in *Sutton v. Commissioner*, 535 F.2d 254 (4th Cir. 1974), affg. a Memoran-

dum Opinion of this Court. In that case, the present value of a surviving spouse's right to receive $400 per month pursuant to a prenuptial agreement, with remainder over to decedent's son, was held ineligible for the marital deduction on the ground that the remainder interest constituted an interest in the same property (namely, the trust corpus) which would pass to someone other than the surviving spouse.

An argument very similar to that made by petitioner herein was rejected by the Supreme Court in *Meyer v. United States*, 364 U.S. 410 (1960). In that case, a life insurance policy obligated the insurer to pay a death benefit of $25,187.50, which sum was included in the gross estate of decedent. The decedent had selected an optional distribution plan which provided for the distribution of proceeds in equal monthly installments to his wife for life, with 240 installments guaranteed, and further provided that if the wife should die before receiving all of the guaranteed installments, his daughter would receive the balance. If the daughter should die before receiving the balance, the value of the guaranteed payments left unpaid would be paid in one sum to the estate of the last to die. From the total proceeds of the policy of $25,187.50, the insurer determined that $17,956.41 was necessary to fund the 240 guaranteed annual payments to the wife, daughter, and/or estate of the survivor of them, and $7,231.09 was necessary to fund the monthly payments to the wife for her actuarial life expectancy beyond the 240 months certain. Accordingly, the insurer made these entries separately on its books.

The executors of the estate contended that the insurer's bookkeeping entries constituted an actual division of the insurance proceeds into two separate "properties"—one of $17,956.41 and another of $7,231.09—and that the latter qualified for the marital deduction because it was payable, if at all, only to the wife if she lived beyond the 240 months, and if no other person had any interest in or possibility of enjoying it.

The Supreme Court, noting that the allocations made were "merely actuarial ones" (364 U.S. at 415), refused to characterize the $7,231.09 balance as a property interest separate from the $17,956.41, and treated both amounts as part of a single fund. Since there was a possibility that the daughter might receive a portion of the fund (i.e., the balance of the guaran-

teed payments), it was concluded that the insurance proceeds did not qualify for the marital deduction. The Supreme Court relied, in part, on an example in the Senate committee report pertaining to the predecessor statute to sec. 2056.[2] The example illustrates the operation of the terminable interest rule, as follows:

> *Example (2).* The decedent during his lifetime purchased an annuity contract under which the annuity was payable during his life and then to his spouse during her life if she survived him. The value of the interest of the decedent's surviving spouse in such contract at the death of the decedent is included in determining the value of his gross estate. A marital deduction is allowed with respect to the value of such interest so passing to the decedent's surviving spouse inasmuch as no other person has an interest in the contract. If upon the death of the surviving spouse the annuity payments were to continue for a term to her estate, or the undistributed portion thereof was to be paid to her estate, the deduction is nevertheless allowable with respect to such entire interest. *If, however, upon the death of the surviving spouse, the payments are to continue to another person (not through her estate) or the undistributed fund is to be paid to such other person, no marital deduction is allowable inasmuch as an interest passed from the decedent to such other person.* [S. Rept. 1013 (Part 2), 80th Cong., 2d Sess. (1948), 1948–1 C.B. 339–340. Emphasis added.][3]

The Court found the example in the committee report to be indistinguishable in any relevant manner from the facts of *Meyer*, and concluded that it—

> makes it very clear that the marital deduction is not allowable in the case of an annuity for the surviving spouse for life if "upon the death of the surviving spouse, the payments are to continue to another person (not through her estate) or the undistributed fund is to be paid to such other person * * *." [364 U.S. at 414.]

Additional authority contrary to petitioner's position is found in section 20.2056(b)–1(e)(2), Estate Tax Regs. Under the regulation the corpus, not the annuity, is treated as the property. The regulation reads as follows:

> In determining whether an interest in the same property passed from the decedent both to his surviving spouse and to some other person, a distinction

---

[2] Sec. 812(e)(1)(B), I.R.C. 1939, the relevant portions of which are identical to the statute during the years in issue.

[3] See also the discussion of the terms "property" and "an interest in property" which is contained in S. Rept. 1013 (Part 2), 80th Cong., 2d Sess. (1948), 1948–1 C.B. 333. This discussion further supports respondent's position.

is to be drawn between "property" as such term is used in section 2056, and an "interest in property." The term "property" refers to the underlying property in which various interests exist; each such interest is not for this purpose to be considered as "property."

Based upon the above authorities, the assets of the Wesleyan and Emory trusts are to be treated as the underlying property in which various interests, such as the surviving spouse's annuity interest, exist. The rights to receive annuity payments look to the underlying trust assets for their realization. As such, the rights to the annuity payments must be viewed as an interest in the property and not as separate property.

Petitioner cites two revenue rulings in support of his position. Of course, we are not bound by revenue rulings. *Minnis v. Commissioner*, 71 T.C. 1049, 1057 (1979). However, we believe that the rulings cited are clearly distinguishable. In both Rev. Rul. 79–420, 1979–2 C.B. 335, and Rev. Rul. 77–404, 1977–2 C.B. 334, the annuity payments were severed from the decedent's inter vivos and testamentary assets and were paid by third parties (in the first, by a corporation, and in the second, by a charitable organization, under a contractual annuity obligation), and the settlor in each case retained no control over the assets which gave rise to the annuity payments.

For the reasons set forth above, we hold that the annuities payable to decedent's surviving spouse under the Wesleyan and Emory trusts constitute nondeductible terminable interests under section 2056 and therefore do not qualify for the marital deduction.

Finally (although not at all clear), it appears that petitioner is raising an alternative argument that the value of the annuities should be deductible as a claim against the estate. No authority is cited therefor but we assume the argument is based on section 2053. In the same summary fashion in which this issue has been raised and discussed by petitioner, we summarily reject it. See *Sutton v. Commissioner, supra,* which, among other things, held that annuity interests do not constitute deductible claims against an estate under section 2053.

## II. Apportionment of Estate Taxes

The second issue to be considered in this case concerns the proper method of apportioning the Federal estate taxes in order to determine the proper value of the charitable remainder for Federal estate tax purposes. A decision with respect to this issue is necessary because (as a result of our holding on the first issue) the residuary estate, out of which decedent in her will directed that the death taxes were to be paid, was reduced below the amount necessary to pay those taxes.[4]

The insufficiency of the residuary estate to pay the Federal estate tax liability triggers the application of the Florida apportionment statute. If, under that statute, the estate taxes are charged against the annuity income interests funded by the Wesleyan and Emory trusts, the estate taxes will not diminish the value of the charitable remainder interests in the trusts, and the Federal estate tax charitable deduction claimed with respect to that remainder will be preserved. On the other hand, if those taxes are charged against the charitable remainder interests in the trusts, the value thereof will be significantly reduced with a corresponding reduction in the Federal estate tax charitable deduction.

The statutory and case law are clear that instructions by a testator in a will (and generally by a settlor in a trust) as to the apportionment of taxes will control.[5] However, where the tax provision of a will fails, as in the instant case, due to exhaustion of the assets specified by the decedent for the payment of taxes, the apportionment statutes are applied to determine what assets will bear that burden. Fla. Stat. sec. 733.805 (West 1975); *First National Bank of Omaha v. United States*, 490 F.2d 1054, 1056 (8th Cir. 1974); see also discussion at 71 A.L.R.3d 247, 338–343 (1976).

The Internal Revenue Code provides no general rules for the apportionment of Federal estate taxes. However, there are a number of specific rules in the Code for the apportionment of

---

[4]As previously explained, the reduction in the residuary estate which occurred is attributable to the failure of the annuities associated with the Wesleyan and Emory trusts to qualify for the marital deduction. Under the formula marital deduction clause of the will, the decedent's specific bequest to her surviving spouse must be satisfied out of property which otherwise would have been part of the residuary estate.

[5]See secs. 2206—2207; Fla. Stat. sec. 733.817(1) (West 1975); *Estate of Jack v. Commissioner*, 8 T.C. 272, 274 (1947); *Guidry v. Pinellas Cent. Bank & Trust Co.*, 310 So. 2d 386 (Fla. Dist. Ct. App. 1975).

Federal estate taxes to life insurance proceeds and to property over which the decedent has a general power of appointment (see secs. 2206—2207). Neither party herein contends that either of the specific Federal rules is applicable to the annuity interests in question.[6] Accordingly, State law will govern the apportionment of the Federal estate taxes among properties passing under and outside the will in question. *Riggs v. Del Drago*, 317 U.S. 95 (1942); *Estate of Jack v. Commissioner*, 8 T.C. 272 (1947); *Estate of Juster v. Commissioner*, 25 T.C. 669, 671 (1955).

A brief review of the general purpose and scope of State apportionment statutes, followed by a summary of the contentions of the parties on this issue, may be helpful prior to a consideration of the specific terms of the Florida apportionment statute and of the specific arguments of the parties herein.

*State Apportionment Statutes*

Florida, along with many other States, has adopted an apportionment statute. See Fla. Stat. sec. 733.817 (West 1975). The first Florida apportionment statute was enacted in 1949 and was modeled after the New York apportionment statute.[7]

Under the common law rule, estate taxes were generally treated as expenses of administration and were therefore payable out of the residuary estate. This rule was perceived to result in hardship and injustice. Since the natural heirs of the decedent are generally bequeathed the residuary estate, under that common law rule, they were burdened with the entire tax, while beneficiaries of specific bequests and devises, unrelated to the decedent, would pay no tax. Many apportionment statutes, therefore, place estate taxes in a category different from an ordinary expense of administration and impose a "burden-on-the-recipient" rule in lieu of the common law "burden-on-the-residue" rule.

The general purpose of many apportionment statutes is to require that those persons who receive gifts from the dece-

---

[6]The Court agrees with this conclusion. Annuity interests appear clearly not to qualify as life insurance proceeds (see 71 A.L.R.3d 247, 258 (1976)), and no power of appointment was retained by the decedent.

[7]The text of the original New York apportionment statute (N.Y. Decedent Estate Law ch. 13, sec. 124 (McKinney 1930)) and the development of State apportionment statutes is described in 71 A.L.R.3d, *supra* at 265–275 (1976).

dent's estate, which gifts are included in the taxable estate and which thereby contribute to the tax liability, shall pay their share of the tax. Apportionment statutes generally reflect a strong public policy in favor of prorating the taxes, and an exception will not be easily inferred. The burden of proof is on those seeking to avoid apportionment. *Guidry v. Pinellas Cent. Bank & Trust Co.*, 310 So. 2d 386 (Fla. Dist. Ct. App. 1975); and see discussion at 71 A.L.R.3d, *supra* at 267–276, 307–312 (1976).

Provisions of apportionment statutes are generally mandatory, not only with respect to the provisions for apportionment, but also as to their other provisions regarding exemptions and deductions for specific property or types of property (*In re Mescall's Will*, 54 Misc. 2d 165, 281 N.Y.S. 394 (1967); 71 A.L.R.3d, *supra* at 309); and apportionment statutes typically contain exemptions for property which is excludable or deductible from the taxable estate, and which property therefore does not contribute to the tax. Property eligible for the marital deduction and property bequeathed to charity are two prime examples. *In re Fuchs' Estate*, 60 So. 2d 536 (Fla. 1952); 71 A.L.R.3d, *supra* at 353–365.

An additional exemption provision which is found in most apportionment statutes is particularly important to the issue involved herein. It applies when a will or trust instrument or other document creates a life income, life estate, or other temporary interest in property, followed by a remainder. In that situation, apportionment statutes generally provide that the temporary interest will be exempt from apportionment, and the tax liability attributable to both the value of the temporary interest and the value of the remainder will be charged against and shall be paid out of the corpus of the property. *Estate of Jack v. Commissioner, supra; In re Setrakian's Estate*, 169 Cal. App. 2d 795, 338 P.2d 247 (1959); see discussion at 67 A.L.R.3d 273, 277–278 (1975). This rule has the effect, for Federal estate tax purposes, of reducing the value of the charitable deduction claimed with respect to the charitable remainder interest.

In *National Newark & Essex Bank v. Hart*, 309 A.2d 512 (Me. 1973), the rule exempting temporary interests from the burden of apportionment was described as universally incorporated into the various apportionment statutes which had been

adopted, and the basis for the rule was described as follows (309 A.2d at 519):

Providing for non-apportionment between temporary and remainder interests has been the universal rule adopted by almost every state which has passed apportionment statutes, and dealt with the particular problem. The proposed Uniform Estate Tax Apportionment Act also provides for no apportionment, and that rule is explained as being "based upon the convenience in trust administration of paying the tax from principal, which avoids accounting problems incident to amortization, as well as on the possible hardship inherent in a requirement of immediate payment by an income tax beneficiary." Practical problems inherent in valuing temporary interests, and computing the tax share to be apportioned between temporary and remainder interests, are manifest. [Fn. ref. omitted.][8]

As we noted previously, apportionment statutes also generally exempt charitable bequests from the burden of apportionment, and where a temporary interest is followed by a charitable remainder, as in this case, a conflict arises between the exemption for the temporary interest and the exemption for the charitable remainder. This conflict, however, has been addressed by a number of courts, and in virtually every case, the conflict has been resolved in favor of the temporary interest. After discussing a number of State court decisions on this point, this Court, in *Estate of Jack v. Commissioner, supra* at 277, which involved Massachusetts law, stated as follows:

These cases also establish the rule, we think, that where a charity has not an outright bequest, but only a remainder interest after a preceding life estate, the charity must bear (in the sense that its bequest will be thereby reduced) only so much of the tax as is attributable to the preceding life estate. This is because of the provision in the apportionment statute which prevents apportionment as between a life tenant and remainderman.

The commentary to section 6 of the Uniform Estate Tax Apportionment Act (1964), which specifies that there will be no apportionment between temporary and remainder interests, specifically addresses the same question and reaches the same conclusion, as follows:

It has been suggested by some members of the Section of Taxation, A.B.A., that Section 6 is unfair, especially where the transferee of the remainder is a charitable, public or like institution and the transfer of the remainder is not

---

[8]Other cases reflecting the same approach are cited, and a further discussion of this principle is found, at 67 A.L.R.3d 273, 277–279 (1975).

subject to tax. There is, however, no practical way to work the matter out, except as stated in Section 6. Most, if not all of the state acts contain similar provisions. The representatives of the Section of Taxation agree with this. [Note, Uniform Estate Tax Apportionment Act, 8A U.L.A. sec. 6 (1964).]

### *Summary of Contentions of the Parties on This Issue*

Respondent argues that the income annuity interests provided under the Wesleyan and Emory trusts constitute temporary interests under Florida law and, therefore, under the Florida apportionment statute, which exempts temporary interests from apportionment, the Federal estate taxes should be charged only to the corpora of the charitable remainder annuity trusts, thereby reducing the value of the estate tax charitable deduction available with respect to this charitable remainder interest.

Petitioner argues that the Florida apportionment statute should be interpreted as containing the same exception to the temporary interest rule that New York has adopted.[9] The New York exception provides that an interest in a true or common law annuity is not treated as a temporary interest under its apportionment statute. Therefore, under the New York rule, a common law annuity is charged its share of estate taxes, leaving less taxes to be charged to the corpus of the trust, thereby producing a larger corpus and a higher value to be placed on the charitable remainder interest in the corpus.

As authority for its position, petitioner asserts that Florida law has adopted the New York rule under which common law annuities are not treated as temporary interests. If Florida law has not adopted the New York rule for common law annuities, petitioner makes no other argument that the annuity interests involved herein are not temporary interests and are not exempt from apportionment as temporary interests under paragraph (c) of section 733.817, Florida Statutes (West 1975).

The basis for petitioner's argument is that the first Florida apportionment statute, enacted in 1949, was modeled after the New York apportionment statute, and petitioner therefore argues that Florida implicitly intended to incorporate into its statutory apportionment scheme all pre-1949 New York judicial decisions interpreting the New York statute. The major

---

[9]N.Y. Est. Powers & Trusts par. 2–1.8(b) (McKinney 1981).

problem with petitioner's argument is that the Florida apportionment statute has been amended at least 7 times since 1949, and at no time has the Florida legislature incorporated into the Florida apportionment statute the special New York rule for common law annuities, even though the New York apportionment statute was itself amended in 1950 to specifically so provide.

In addition to the absence, in all versions of the Florida apportionment statute since 1949, of the special New York rule for common law annuities (even though, we emphasize, it has been a part of the New York statute since 1950), there are additional reasons for rejecting petitioner's argument. The Florida apportionment scheme, since first amended in 1957, has substantially deviated from that of New York, and the various Florida judicial decisions and commentators concerning apportionment in that State have not suggested in any way that the New York rule for common law annuities has ever become a part of Florida law.

We will first note the various amendments to the Florida statute, followed by a brief review of Florida judicial decisions and of law review articles. Lastly, we will discuss briefly the apparent basis for the New York rule and the criticism thereof by other courts.

## The Florida Apportionment Statute

Prior to enactment of its first apportionment statute (1949 Fla. Laws ch. 25.435, secs. 1–4), the law in Florida was not clear as to whether equitable apportionment applied. Two cases decided shortly after the first statute was enacted stated that equitable apportionment was the common law rule in Florida. See *Hagerty v. Hagerty*, 52 So. 2d 432, 435 (Fla. 1951); *In re Fuch's Estate, supra.* The statements in the referenced cases are probably based on a statement of the Florida legislature when the 1949 statute was adopted that it—

considers the equitable principle of this Act as merely declaratory of the existing public policy of this state. [Fla. Stat. Ann. sec. 734.041, quoted in *In re Gatos Estate*, 97 N.Y.S. 2d 171, 175 (1950), involving Florida law.]

However, other authority exists that equitable apportionment applied in Florida prior to 1949 only where the surviving spouse elected dower and only imposed a share of the estate

taxes on the dower interest. (See *Wells v. Menn*, 158 Fla. 228, 28 So. 2d 881, 884 (1946); *In re Ruperti's Estate*, 194 Misc. 376, 86 N.Y.S.2d 887 (Surr. Ct. 1949); Lindsay, "Florida's Estate Tax Laws—Apportionment Versus A Charge Against Residue," 12 U. Fla. L. Rev. 50, 51 and n. 4 (West 1959).)

The 1949 Florida statute (Fla. Stat. sec. 734.041 (West 1949)), provided for equitable apportionment among all assets of the estate that contributed to the tax, unless otherwise specified by will. The law was very general and gave rise to so many questions that it was "summarily scrapped [in 1957] and an entirely new" apportionment statute was enacted. Lindsay, *supra* at 59.

Turning one hundred eighty degrees from the provisions of the 1949 statute, under the 1957 Florida apportionment statute (Fla. Stat. sec. 731.34 (West 1957)), all taxes were charged to the residue, unless otherwise specified in the will. Further amendments of less significance were made to the Florida statute in 1963 (1963 Fla. Laws ch. 63–106, sec. 1), and 1965 (1965 Fla. Laws ch. 65–230, sec. 1). In 1971, the statute was amended to the language which, in most respects, constitutes the present statute. Fla. Stat. sec. 734.041 (West 1971). Minor amendments were made in 1973, 1974, and 1975. (See Fla. Stat. sec. 734.041 (West 1973); 1974 Fla. Laws ch. 74–106, sec. 1; 1975 Fla. Laws ch. 75–220, sec. 95.)

Section 733.817 of the current Florida Statutes (1975) provides a hybrid version of the typical apportionment statute. The relevant portions of that statute are set out below:

Fla. Stat. sec. 733.817 (West 1975)

(1) Any estate, inheritance, or other death tax levied or assessed under the tax laws of this or any other state, political subdivision, or country or of any United States revenue act concerning any property included in the gross estate under the law shall be apportioned in the following manner:

(a) If a part of the estate passed under a will as a specific devise or general devise or in any other nonresiduary form, exclusive of property over which the decedent had a power of appointment as defined from time to time under the estate tax laws of the United States, the net amount of the tax attributable to it shall be charged to and paid from the residuary estate without requiring contribution from persons receiving the interests, except as otherwise directed by the will. In the event the residuary estate is insufficient to pay the tax attributable to the interests, any balance of the tax shall be equitably apportioned among the recipients of the interests in the proportions that the value of each interest included in the measure of

the tax bears to the total of all interests so included, except as otherwise directed by the will.

(b) If a part of the estate passed under the will as a residuary interest, exclusive of property over which the decedent had power of appointment, the net amount of tax attributable to it shall be equitably apportioned among the residuary beneficiaries in the proportions that the value of the residuary interest of each included in the measure of the tax bears to the total of all residuary interests so included, except as otherwise directed by the will. When a residuary interest is an interest in income or an estate for years or for life or other temporary interest, the tax attributable to it shall be charged to corpus and not apportioned between temporary and remainder estates.

(c) If a part of the property concerning which the tax is levied or assessed is held under the terms of any trust created inter vivos or is subject to a power of appointment, the net amount of the tax attributable to it shall be charged to and paid from the part of the corpus of the trust property or the property subject to the power of appointment included in the measure of the tax, as the case may be, and shall not be apportioned between temporary and remainder estates, except as otherwise directed by the trust instrument concerning the fund established by it or by the will.

Paragraphs 1(a) and (b) pertain to the probate estate and (in a substantial departure from early apportionment statutes, and in particular, from the original and present New York statutes) provide, generally, that all taxes attributable to the probate estate will be charged to the residue of the probate estate, unless otherwise provided by will.

Paragraph (b) provides that only those portions of the residue of the probate estate that are included in the tax base will be charged with taxes, thereby freeing from apportionment charitable and deductible marital gifts which are part of the residuary estate.

Paragraph (a) specifies that only if the residue is insufficient to pay the total estate taxes due on the probate estate will the estate taxes be equitably apportioned among all assets of the estate contributing to the tax liability.

Paragraph (c) of section 733.817, Florida Statutes, is pertinent to the inter vivos trusts which are involved in this case. It provides that the portion of the tax that is attributable to the inclusion in the estate of nonprobate property such as inter vivos gifts will be charged its pro rata share of the taxes due. However, at the heart of the instant controversy is the additional language in paragraph (c) that provides that with respect to nonprobate assets, where a life estate precedes a

remainder interest, no apportionment will occur as between those respective interests, and the corpus will bear the tax.

We find nothing in these statutory provisions to suggest that any rule is applicable to the annuities involved herein, other than the stated exemption from apportionment which is given to temporary interests. As stated previously, when originally enacted in 1949, the Florida statute contained no exemption from the temporary interest rule for common law annuities, and none of the amendments thereafter through the present time have adopted such a rule. The basic statutory scheme of the Florida statute provides that, unless otherwise stated by the testator, the residue of the probate estate is to bear the burden of estate taxes attributable to probate property and that, with respect to nonprobate property included in the estate (such as the assets of an inter vivos trust), the estate taxes generally will be charged to the corpus, not to temporary interests therein. The dissimilarity between the Florida and New York apportionment statutes precludes a conclusion or inference that Florida has adopted the New York rule for common law annuities.

*Florida Cases and Commentators*

Early decisions of the Florida courts do reflect that the original 1949 Florida statute was modeled after the New York statute (see *In re Fuchs' Estate, supra* at 538), but no decision concerning the Florida apportionment statute as substantially revised in 1957 and later years suggests that the Florida statute (since its revision in 1957) has had any particular kinship to the New York statute. If anything, those cases highlight the extent to which the Florida statute has moved away from the strict equitable apportionment concepts of the New York statute to a rule which imposes the tax burden on the residue unless otherwise specified by the testator in his will. *In re Barret's Estate*, 137 So. 2d 587 (Fla. Dist. Ct. App. 1962), it was held that under the amended 1957 Florida statute, the entire tax liability was to be borne by the residuary estate, and assets passing outside the will were not subject to taxes at all. Understandably, no particular mention of New York statutory or case law appears in that case. To the same effect are *Aronson v. Congregation Temple De Hirsch*,

138 So. 2d 69 (Fla. Dist. Ct. App. 1962), and *In re Estate of Miller*, 301 So. 2d 137 (Fla. Dist. Ct. App. 1974).

In *Estate of George v. McNutt*, 200 So. 2d 256 (Fla. Dist. Ct. App. 1967), the version of the Florida abatement statute was considered under which the assets of the estate first abated were the residuary assets, where there were inadequate assets to pay taxes. Abatement (as under the present Florida abatement statute, see Fla. Stat. sec. 733.805 (West 1975)) did not apply equitably to all assets.

And, in a case involving life income interests in trust property, the Florida court noted that the 1963 amended version of the Florida apportionment statute provided that payment of death taxes was to come from the corpus of the trust, not from the life income interests. *Guidry v. Pinellas Cent. Bank & Trust Co., supra.* No reference was made in this opinion to New York law, let alone any reference to a special rule under Florida law for annuity interests.

In 1949, the year Florida enacted its first apportionment statute, a Note, at 62 Harvard Law Review 1027, specifically explained the rule exempting temporary interests from apportionment and explained the consequences of that rule when the remainderman is a charitable institution, as in this case, as follows:

> *Future Interests.*—While the federal tax statute is silent as to apportionment between temporary and remainder estates, the state statutes provide for payment of the entire proration from corpus. This method indirectly apportions the tax by reducing the income *pro tanto*, and generally avoids the difficulty of making separate valuations of present and future interests. Even in the case of charitable remaindermen, where such separate valuations are necessary in order to compute the amount of the federal tax, the courts have charged against corpus that portion of the tax attributed to the non-charitable temporary interests. [Fn. refs. omitted.]

This Note does not mention the New York exception for annuity interests.

In Riggs, "Florida Estate Tax Apportionment," 25 U. Fla. L. Rev. 719, 724–725 (1973), the rule concerning temporary income interests versus charitable remainder interests is expressly recognized, and no mention is made of any exception for income annuities, nor is any reference made on this point to New York law.

## The New York Statute

Turning briefly to the New York statute, the parties have pointed out that the portion of the New York apportionment statute pertaining to temporary and remainder interests was amended in 1950 by the addition of the following sentence (N.Y. Est. Powers & Trusts par. 2–1.8 (McKinney 1981)):

The provisions of this paragraph apply although the holder of the temporary interest has rights in the principal, but do not apply to a common law annuity.

We find it significant that the New York legislature amended its statute in 1950, apparently in order to clarify its statute on this point, and yet the Florida legislature, while making numerous other major changes to its apportionment statute, has never conformed to the New York amendment. The only logical explanation is that common law annuities are treated under the Florida apportionment statute in the same manner as other temporary interests and that the New York rule for common law annuities has not been adopted in Florida.

We also note that as early as 1958, the Supreme Court of Tennessee, in *Moore v. Moore*, 204 Tenn. 108, 315 S.W.2d 526, 531 (1958), refused to apply the New York rule to Tennessee apportionment law and criticized the New York law as not having a logical basis. See also 71 A.L.R.3d, *supra* at 336–337 (1976); 67 A.L.R.3d, *supra* at 295 (1975).

In summary, it is concluded that the income annuity interests and the charitable remainder interests involved in this case are governed by the statutory language of Florida Statutes section 733.817 1(c). No portion of the additional estate taxes due herein and attributable to the inclusion of the Wesleyan and Emory trusts' assets in the taxable estate can be allocated to the annuity interests but must be allocated exclusively to the corpora of those trusts.

For the reasons set forth above, we sustain respondent's determinations on the issues discussed above.

*Decisions will be entered under Rule 155.*