ESTATE OF RAYMOND BAKER, JR., DECEASED, NANCY O'DONNELL BAKER, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Baker v. Commissioner
Docket No. 39483-86.
United States Tax Court
T.C. Memo 1988-483; 1988 Tax Ct. Memo LEXIS 510; 56 T.C.M. (CCH) 417; T.C.M. (RIA) 88483; October 5, 1988. Kenneth R. Hughes and Donald L. Wiley, for the petitioner. Nancy B. Herbert, for the respondent. RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined an estate tax deficiency in the amount of $ 61,565.66 in respect of the estate of Raymond M. Baker, Jr., who died November 28, 1982, a resident of Ohio. After a concession, *512 two issues are presented for decision. The principal issue is whether an interest received by decedent's wife is eligible for the marital deduction. Petitioner presents as a second issue, in the event that it is unsuccessful on the first issue, whether certain debts owed by the decedent must be applied against that interest so as to reduce the amount thereof includable in the gross estate. The facts have been fully stipulated and the stipulation is incorporated herein by this reference. At the time of decedent's death, he was self-employed as a general agent for the Northwestern Mutual Life Insurance Company (sometimes hereinafter referred to as Northwestern or Northwestern Mutual or the Company). As a general agent, decedent's duties (both personally and through agents) were to perform the following: develop life insurance business in his territory, service policy holders, collect certain specified premiums from the policy holders, and keep records of all such transactions. 1. Whether petitioner is entitled to a marital deduction with respect to decedent's wife's interest in decedent's future margins and commissions. Under his General Agent's Contract, which became effective *513 April 1, 1976, decedent earned commissions and overriding commissions as a percentage of first year and renewal premiums. The contract contained the following provisions in respect of decedent's rights to commissions accrued upon termination of the agreement as well as to commissions accruing thereafter: 25. Level Payment of Commissions after Termination -- If and when General Agent shall file with the Company, on the Company form provided for the purpose, his election to have payment of his commissions after termination of this agreement controlled by this Paragraph 25, then the following provision shall govern: (a) Upon termination of this agreement the commissions then accrued or thereafter accruing which General Agent would otherwise be entitled to receive (except such portion of any commissions as is payable to any Agent under contract with General Agent pursuant to the terms of such contract) shall not be paid to General Agent, but shall be retained by the Company and amounts equal thereto shall be credited to an account on its books (the "Account"). Interest shall accrue on the balance from time to time * * * and shall be credited by the Company to the Account at least *514 annually. Amounts standing to the credit of the Account shall be carried as an indebtedness of the Company payable in accordance with (b) of this provision. General Agent shall have no interest in the Account, which is established merely as an accounting convenience and shall not operate to segregate any balance therein from the general assets of the Company. (b) The Company shall, subject to the provision for setoff in Paragraph 30, make payments from the Account to General Agent, in monthly installments in the amount, and for the number of years, elected by General Agent prior to the aforesaid termination. * * * In the event this agreement is terminated by General Agent's death or his death occurs thereafter, payments pursuant to the terms of this provision shall be made in like manner in accordance with Paragraph 26. All payments pursuant to (b) of this provision shall be charged against the Account. [Emphasis supplied.] * * * Paragraph 26, referred to above, gives the general agent "the right to designate beneficiaries to receive commissions, fees and other remuneration accrued at his death and thereafter accruing". It goes on to specify requirements relating to *515 "classes" of beneficiaries and to "succession in interest of the beneficiaries". As developed in detail hereinafter, the decedent did name his wife as direct beneficiary and his two children as contingent beneficiaries. The pertinent provisions of paragraph 26 will then be set forth fully in connection with our consideration of the rights of the decedent's wife as beneficiary. The principal issue before us is whether her interest, as beneficiary, in the decedent's future margins [1] and commissions is eligible for the marital deduction. *516 On June 27, 1975, decedent had executed a form "Designation of Beneficiaries for Terminal Commissions and Other Compensation". [2] The beneficiaries listed thereon would receive at his death "all commissions, fees and other compensation accrued or accruing under all current, terminated and future contracts and agreements with [t]he * * * Company and/or any agent of the Company". The decedent's wife, Nancy O'D. Baker, was designated as "direct beneficiary" and his children, Edie and Raymond Baker, were designated as "contingent beneficiaries". At the time decedent made the foregoing designation, there was available an additional form which supplemented the form petitioner used to designate his wife and children as beneficiaries. The supplemental form was meant to assure a marital deduction for the interest in a general agent's commissions and other compensation which passed to his wife at his death. That form provided *517 that "Notwithstanding any provision of the agreement and/or contract between myself and The Northwestern Mutual Life Insurance Company to the contrary, in the event that my spouse survives me, she will have the power to revoke any previous designation of contingent beneficiaries and further payees; and thereupon, she will have the power to appoint all Agent's Commission payments either in favor of her estate or of such contingent beneficiaries as she may designate". Decedent did not execute such a supplemental form. In accordance with paragraphs 25 and 26 of his contract with the Company, decedent had the option of electing that, at his termination as a general agent, his potential future margins and commissions be payable to him, or to his beneficiaries in the event of his death, at a level rate over a chosen period of time. This option was referred to as the "General Agent's Spreadout Election" (hereinafter the election or the spreadout election). Decedent executed a form in 1978 or 1979 making that election to have his margins and commissions paid on his termination in level installments over a period of 30 years. The form on which the election was made provided that "This *518 election may not be changed or revoked after the Spreadout provisions become operative". There is no question that decedent's prior (June 27, 1975) designation of his wife and children as beneficiaries was applicable to the payments to be made, under his 30-year spreadout election, after his death. As previously indicated, the General Agent's Contract provides, in connection with the payments pursuant to the spreadout option elected, that "In the event this agreement is terminated by General Agent's death or his death occurs thereafter, [spreadout] payments * * * shall be made * * * in accordance with Paragraph 26". That paragraph is concerned with the beneficiaries of the spreadout payment of decedent's future margins and commissions and states as follows: 26. Beneficiaries -- (a) General Agent shall have the right to designate beneficiaries to receive commissions, fees and other remuneration accrued at his death and thereafter accruing. Any such designation of beneficiaries shall be subject to the following provisions: (i) CLASSES -- Beneficiaries shall be of the same classes as provided in life insurance policies of the series issued by the Company on the date of *519 this agreement.
(ii) SUCCESSION -- The succession in interest of the beneficiaries shall be as stated in the Settlement Option Provisions of life insurance policies of said series. If no beneficiary is designated or if no beneficiary survives General Agent, amounts accrued at General Agent's death and thereafter accruing shall be paid to his executor or administrator or to the persons entitled thereto under applicable law. [Emphasis supplied.] * * * At his death, decedent was covered by a life insurance policy issued by Northwestern. Resolution of the controversy here depends largely on the extent to which the terms of that policy are incorporated into paragraph 26(a)(i) and (ii) of the General Agent's Contract. [3] Those life insurance policies, referred to in paragraph 26(a)(i) and (ii) of the General Agent's Contract above, provide in past as follows under the heading "SECTION 8. BENEFICIARIES": 8.1 DESIGNATION AND CHANGE OF BENEFICIARIES *520 a. By Owner. The Owner may designate and change direct and contingent beneficiaries and further payees of death proceeds: (1) during the lifetime of the Insured. (2) during the 60 days following the date of death of the Insured, if the Insured immediately before his death was not the Owner. * * * b. By Direct Beneficiary. The direct beneficiary may designate and change contingent beneficiaries and further payees; (1) if the direct beneficiary is the Owner; or (2) if, at any time after the death of the Insured, no contingent beneficiary or further payee is living, subject to the Owner's exercise of rights under Section 8.1a(2). * * * c. By Spouse (Marital Deduction Provision). Notwithstanding any provision of Section 8 or 9 of this policy to the contrary, if the Insured immediately before death was the Owner and if a direct beneficiary is the spouse of the Insured and survives the Insured, that direct beneficiary will have the power to appoint all amounts payable to him under the policy. Under the power, the spouse can appoint to the executors or administrators of his estate or to any other persons as contingent beneficiaries and further payees. The exercise *521 of the power will revoke any then existing designation of contingent beneficiaries and other payees as to those amounts and any election of a payment plan applying to them. [Emphasis supplied.] * * * 8.2 SUCCESSION IN INTEREST OF BENEFICIARIES a. Direct Beneficiaries. The proceeds of this policy will be payable in equal shares to the direct beneficiaries who survive and receive payment. The unpaid share of any direct beneficiary who dies while receiving payment will be payable in equal shares to the other direct beneficiaries who survive and receive payment. b. Contingent Beneficiaries. At the death of the last surviving direct beneficiary, the proceeds, or the withdrawal value of any unpaid payments under a payment plan, will be payable in equal shares to the contingent beneficiaries who survive and receive payment. The unpaid share of any contingent beneficiary who dies while receiving payment will be payable in equal shares to the other contingent beneficiaries who survive and receive payment. [Emphasis supplied.] c. Further Payees. At the death of the last to survive of the direct and contingent beneficiaries, the proceeds, or the withdrawal value of any unpaid *522 payments under a payment plan, will be paid in one sum: (1) in equal shares to the further payees who survive and receive payment; or (2) if no further payees survive and receive payment, to the executors or administrators of the last to survive of the direct and contingent beneficiaries. d. Owner or His Estate. If no direct or contingent beneficiaries or further payees survive the Insured, the proceeds will be paid to the Owner or his estate. Shortly after decedent's death, the Company's "Administrator of Field Benefits" wrote to decedent's wife to explain to her, among other benefits, the payout of future margins and commissions. The letter explained that "Ray elected to have his future margins and commissions paid to you in level monthly installments over 30 years". The letter further described the payout elected as follows: [Decedent's] estimated future margins and commissions * * * could be expected to support level monthly Spreadout payments of about $ 3,800 over 30 years. * * * However, a portion of these payments may be applied to Ray's Company loan balance and other agency indebtedness, depending on how it is decided to repay these obligations. * * * The *523 Spreadout payment results are not guaranteed, since they will depend on the future margins, commissions and interest actually credited to the Spreadout account. At the end of 10 years when all of the margins and commissions have been received, the monthly Spreadout amount will be modified to distribute the residual account balance in approximate level installments over the remaining 20 years. Thus, the monthly amount could be either increased or reduced after that time. In the event of your death, any remaining installments are to paid in equal shares to Ray's children, Edie and Raymond. [Emphasis supplied.] The letter further stated that the discounted value of the interest created by the election was calculated to be $ 409,100. The Commissioner has accepted that value of the expected future margins and commissions. This amount, described as "Northwestern Mutual Life Insurance Company future margins & commissions payable to Nancy O. Baker over 30 years, present worth value per Evans 'D' Persistency Table, 5-1/2%", was included in the total gross estate under Schedule F "Other Miscellaneous Property * * *" and the I.R.S. has not challenged it. The Government's dispute *524 with petitioner centers on the estate's inclusion of the future margins and commissions payable as a part of the marital deduction. In his notice of deficiency, dated July 16, 1986, the Commissioner reduced the marital deduction shown on the return "by $ 409,100.00 because the Northwestern Mutual Life Insurance Company future margins and commissions payable to Nancy O. Baker is a non-deductible terminable interest as defined in Section 2056 of the Internal Revenue Code". Petitioner argues that the interest in future margins and commissions is not a terminable interest, but instead comes within the exception to terminable interests contained in section 2056(b)(5) for a "Life estate with power of appointment in surviving spouse". Petitioner did not make the claim for the marital deduction on its estate tax return by means of an election under section 2056(b)(7) for qualified terminable interest property and does not, nor may it now (section 2056(b)(7)(B)(v)), seek the deduction on that basis. On August 13, 1986, shortly after the Commissioner's notice of deficiency was mailed, Northwestern's "Assistant General Counsel" wrote to the I.R.S. Appeals Officer *525 handling petitioner's case in a professed attempt to "assist in an ultimate determination of this matter, as to whether the decedent's (Raymond Baker) spreadout election qualifies for the marital deduction". In that letter the Assistant General Counsel stated that the supplemental beneficiary designation form was considered to be "[t]he preferred form of qualification", although he indicated that by incorporating terms of life insurance policies giving the wife a power of appointment, "[p]aragraph 26(a) of the general agent's contract does provide an ancillary means of qualifying for the marital deduction". On January 11, 1988, decedent's wife undertook to exercise a power of appointment with respect to "payments for the terminal commissions" of her husband. Northwestern accepted that exercise of her power on January 21, 1988. Section 2056(a) provides for the allowance of a marital deduction against the gross estate. It states that "the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest *526 in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate". Section 2056(b) is concerned with limitations on the marital deduction in the case of life estates or other terminable interests. It sets forth in paragraph (1) the general rule that no marital deduction under section 2056 is allowed for a terminable interest. That type of interest is described in section 2056(b)(1) as an interest passing to the surviving spouse if "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event on contingency to occur [the interest] * * * will terminate or fail". The regulations interpreting section 2056 (at section 20.2056(b)-1(b), Estate Tax Regs.) give, as examples of terminable interests, "[l]ife estates, terms for years, annuities, patents and copyrights". Section 2056(b)(5) provides for an exception to the nondeductibility of terminable interests in the case of a "Life estate with power of appointment in surviving spouse", described *527 as follows: [A]n interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse * * *.
The exception to nondeductibility is further limited in section 2056(b)(5) to circumstances in which the wife's power to appoint "is exercisable by such spouse alone and in all events". The Government's position here is that the wife's interest in the future margins and commissions is a terminable interest. It is based on the plain import of both decedent's spreadout election and the designation of his wife as direct beneficiary and his children as contingent beneficiaries of the spreadout payments. *528 The contention is that the consequence of these choices by decedent, in the context of the governing contracts, is that the wife's interest in the future margins and commissions is a terminable interest under section 2056(b). The Government reads the forms and contracts involved to mean that "the monthly payments are first to be paid over to decedent's spouse, but, in the event of her death during the 30-year payment period, the payments would then be made to the decedent's children". Thus, the Government's argument continues, the wife's death would be an "event or contingency" causing the interest to "terminate or fail" and resulting in its characterization as a terminable interest under section 2056(b). Petitioner does not dispute that the interest passing to the wife is a terminable one if the Government's characterization of that interest is correct. It could hardly do so in the light of the decided cases. See, e.g., Meyer v. Commissioner,364 U.S. 410, 412-413 (1960); Estate of Leach v. Commissioner,82 T.C. 952 (1984). Instead, it takes issue with the Government's description of the interest. Petitioner contends that the wife is given *529 a power of appointment over the interest by means of the incorporation of section 8.1c of the life insurance contract into the portion of the General Agent's Contract governing the spreadout election. This power of appointment, it is argued, places the interest into the exception to terminable interests described in section 2056(b)(5). As an alternative, regardless of the incorporation of the life insurance contract into the General Agent's Contract, it argues that the Government misunderstands the meaning of the term "contingent beneficiary". It asserts that instead of taking at the death of the direct beneficiary, the contingent beneficiary takes only if the direct beneficiary does not survive the decedent. The consequence of such a definition is that the wife's death is not an event or contingency resulting in termination of the interest. We address petitioner's alternative arguments in turn. a. Power of appointment. Petitioner's primary argument is that the wife is given a power of appointment as a result of the incorporation of section 8.1c of the life insurance contract into the General Agent's Contract by paragraph 26(a)(ii) thereof. The relevant incorporating provision *530 of the General Agent's Contract provides that "[t]he succession * * * of the beneficiaries shall be as stated in the Settlement Option Provisions of life insurance policies of said series", that is, "the series [of policies] issued by the Company on the date of this [General Agent's] agreement". Petitioner's argument is that these words serve to incorporate into the General Agent's Contract the following provision of the life insurance policy covering decedent at his death: 8.1 DESIGNATION AND CHANGE OF BENEFICIARIES * * * c. By Spouse (Marital Deduction Provision). Notwithstanding any provision of Section 8 or 9 of this policy to the contrary, if the Insured immediately before death was the Owner and if a direct beneficiary is the spouse of the Insured and survives the Insured, that direct beneficiary will have the power to appoint all amounts payable to him under the policy. Under the power, the spouse can appoint to the executors or administrators of his estate or to any other persons as contingent beneficiaries and further payees. The exercise of the power will revoke any then existing designation of contingent beneficiaries and other payees as to those amounts *531 and any election of a payment plan applying to them. [Emphasis supplied.] The above quoted portion of the life insurance policy allows the surviving spouse of the insured, in essence, to designate or change the designated beneficiary of the policy. If that provision were applicable here, petitioner's position would be unassailable. However, the General Agent's Contract does not incorporate all the provisions of the life insurance policy, lock, stock, and barrel, including the foregoing section 8.1.c. That contract does provide (paragraph 26(a)) that the "General Agent shall have the right to designate beneficiaries to receive commissions * * *" and makes clear only that "such designation * * * shall be subject to" provisions in the life insurance policy relating to "(i) 'CLASSES' * * * [and] (ii) 'SUCCESSION' * * *". Those are the provisions dealt with in section 8.2 of the policy, not section 8.1c, relied upon by petitioner. It is only the classes of beneficiaries chosen by the general agent and the succession of those classes which the General Agent's Contract says must be the same as stated within the life insurance policies. Section 8.2 of the policy lists *532 three classes of beneficiaries -- direct beneficiaries, contingent beneficiaries -- direct beneficiaries, contingent beneficiaries, and further payees -- and describes the "succession in interest" of each such class. It is these provisions of the life insurance contract which the General Agent's Contract incorporates when it states in 26(a)(i) that "[b]eneficiaries shall be of the same classes as provided in life insurance policies * * *" and in 26(a)(ii) that "[t]he succession in interest of the beneficiaries shall be as stated in the Settlement Option Provisions of life insurance policies * * *". The analysis here is made difficult by the fact that there is no language in the life insurance policy that matches the incorporating language of the General Agent's Contract. The General Agent's Contract refers to language contained in "the Settlement Option Provisions" of the life insurance policy, yet there is no such so headed provisions or provisions in the policy. Faced with these contracts, the best we can do is to determine which provisions of the life insurance policy deal with "classes" of beneficiaries and the "succession" of those classes. On the record before us, *533 we find that those topics are dealt with solely in paragraph 8.2 of the contract and not in 8.1, which is concerned instead with the designation and change of beneficiaries. Provisions of the policy governing the designation and change of beneficiaries are not incorporated by paragraph 26 of the General Agent's contract. Our conclusion is supported by the existence of the supplemental form used to assure the marital deduction to a general agent's estate. There would appear to be no use for such a form if the interest created by the designation of beneficiary form as amplified by the spreadout election would qualify for the marital deduction simply by virtue of the terms of the General Agent's Contract incorporating the life insurance policy. Nonetheless, the assistant counsel of Northwestern has represented that although the supplemental form was the "preferred form of qualification" for the marital deduction, the incorporation of the life insurance policy into the General Agent's Contract was "an ancillary means of qualifying". This position, however, was taken by counsel only after the present controversy had arisen and in an attempt to defend petitioner's marital deduction *534 before the Internal Revenue Service. Northwestern's acceptance of the wife's exercise of her power of appointment also occurred only after petitioner's dispute with the Internal Revenue Service had begun and can be viewed in the same light. A more impartial statement of the Company's position can be found in the letter sent several years earlier to decedent's wife at his death by Northwestern's Administrator of Field Benefits. That letter stated unequivocally that "[i]n the event of [the wife's] death, any remaining installments are to be paid in equal shares to Ray's children, Edie and Raymond". No mention was made therein of any reading of the General Agent's Contract which might give the wife a power of appointment. We find that the wife was not given any such power of appointment. b. Rights of contingent beneficiaries. Petitioner's alternative argument is that the contingent beneficiaries do not take in the event of the direct beneficiary's death, but only if the direct beneficiary (decedent's wife) does not survive the decedent himself. This interpretation is contradicted by the very terms of the life insurance policy which we have found to be relevant here, namely, *535 the provisions dealing with the classes of beneficiaries and their succession in interest. Those provisions describe the interest of a contingent beneficiary as follows: "At the death of the last surviving direct beneficiary, the proceeds, or the withdrawal value of any unpaid payments under a payment plan, will be payable in equal shares to the contingent beneficiaries who survive and receive payment". Thus, a contingent beneficiary takes on the death of the direct beneficiary and is not limited, as petitioner contends, to taking only in lieu of the direct beneficiary if the direct beneficiary does not survive the decedent. This conclusion is supported by the letter from Northwestern's Administrator of Field Benefits explaining decedent's death benefits to his wife. As noted above, the letter stated that, on the wife's death, "any remaining installments are to be paid in equal shares to Ray's children, Edie and Raymond". Thus, on the wife's death, decedent's children, whom he had named as contingent beneficiaries, had a contingent right to the spreadout payments. This is the classic example of a terminable interest. It is, consequently, not allowed as part of the marital deduction.
*536 2. Whether the amount includable in the gross estate attributable to the periodic payments to the widow must be reduced by the amount o indebtedness owed by the decedent to Northwestern. Paragraph 26(b) of the General Agent's Contract, supra, p. 3, provides that the monthly installments payable to Northwestern shall be "subject to the provisions for setoff in Paragraph 30". Paragraph 30 provides: 30. Setoff -- The Company at any time may pay directly to any Agent any commissions due him from General Agent. The Company may set off any such payment, or any debt due from General Agent to the Company, against any commissions or other remuneration due or to become due to General Agent under this or any prior agreement. At the time decedent entered into the General Agent's Contract with Northwestern, he submitted an application for "Agent Financing Funds". That application was accepted by the Company. Under the financing agreement entered into, decedent was able to borrow funds from Northwestern "from time to time * * * for the financing of agents under contract in my General Agency." [4] Decedent's obligation to repay amounts borrowed under the agreement was described *537 in the application for the financing as follows: "All funds advanced by you [Northwestern] hereunder, and all interest thereon, shall constitute a personal obligation from me [decedent] to you, and I agree to make repayment thereof". The application further stated: (d) In the event my General Agency contract is terminated, I will forthwith repay to you in cash the entire balance then owing hereunder, unless you and I then negotiate a mutually acceptable arrangement for delayed repayment, or for the assumption of such balance by my successor General Agent. At the time of his death, decedent owed Northwestern $ 237,506 which he had borrowed from it. Of the $ 237,506 owed, $ 40,449 was attributable to the purchase of two telephone systems used in decedent's business. Also listed on the estate tax return is a $ 51,788 debt owed to Northwestern with respect to "Furniture & Equipment". When Northwestern wrote decedent's wife to explain the benefits due her on his death, it was noted that *538 "these [death benefit] payments may be applied to Ray's Company loan balance and other agency indebtedness, depending on how it is decided to repay these obligations". Decedent's will provides that, aside from bequests to his wife of his residence, all chattel therein, and automobiles, decedent gave, devised, and bequeathed his property to "FIFTH THIRD BANK of Cincinnati, Ohio, or its successor, as Trustee under an agreement of trust executed prior to this will on the 29th day of June, 1976 * * *". The net income of that trust was paid to decedent during his lifetime. At his death, the property held in trust and the proceeds of all policies of life insurance payable to the Trustee were required to be "divided by the Trustee into two (2) parts". The first part, designated Fund A, was "to consist of property equal in value to the amount of the maximum marital deduction allowable in determining the federal estate tax on Grantor's estate less the aggregate value of all other property included in such marital deduction which passes or has passed to Grantor's said wife under Grantor's will, as a surviving joint tenant, as a beneficiary of life insurance or otherwise". The net *539 income of Fund A was to be paid to decedent's wife during her lifetime. Further, the wife was granted a general power of appointment with respect to the principal of Fund A left at her death. To the extent the wife's power of appointment was not exercised, the principal of Fund A was to be added to and commingled with Fund B. Fund B was evidently to be made up of the assets which were not contained in Fund A. From Fund B, the Trustee was to pay, on the request of the executor or administrator of decedent's estate, "all estate, gift, personal property taxes or assessments * * *, and all income tax for which Grantor or his estate may be liable * * *, and all inheritance and succession taxes * * * and any debts of Grantor's estate allowed by his executor or administrator and any cash bequests * * *". (Emphasis supplied.) The balance of Fund B was, for the most part, reserved for decedent's children, although his wife had a right to nominal amounts of the income therefrom in the event Fund A was depleted and a right to greater amounts in the discretion of the Trustee. Ohio law in effect at the time of decedent's death provided for the distribution of a decedent's creditors. *540 Ohio Rev. Code Ann. section 2113.53 and 2113.54 (Anderson, 1976). If necessary, assets of the estate can be sold to satisfy those claims. Section 2113.40. Under section 2113.40 of the Ohio Code, personal property which is not specifically bequeathed is to be sold before that which is specifically bequeathed. Cf. In re Estate of Penney,504 F.2d 37, 40ff. (6th Cir. 1974); Young Men's Christian Ass'n v. Davis,106 Ohio St. 366, 140 N.E. 114, 115 (1922); In re Boughton,163 N.E.2d 423 (Ohio P. Ct. 1959). Moreover, section 2107.54 of the Code provides that if a debt must be paid out of devised or bequeathed property, the payment of the debt "will fall equally on all the devisees and legatees according to the value of the property received by each of them". An exception is made in that same section for circumstances in which "the testator has exempted a devisee or legatee from liability to contribute to the payment of debts, or if the will makes a different provision for the payment of debts * * *". (Emphasis supplied.) Petitioner *541 asserts that the debts decedent owed to Northwestern should offset the value of the terminable interest, thereby reducing the amount of that interest which is includable in the gross estate and increasing the amount of the marital deduction generated by other property passing to the wife. It relies on the fact that Northwestern may setoff, against any commissions due to decedent, the debt decedent owed to Northwestern. It compares the situation here with that of a mortgage debt, which, it argues without providing any authority, is an encumbrance properly charged against the mortgaged property. First, petitioner's analogy to a mortgage debt is flawed. The debt decedent owed Northwestern can in no way be considered to be as closely related to his wife's interest in his commissions as a mortgage debt is to the mortgaged property. While a mortgagee will generally look principally to the property for payment of his debt, it is unlikely that Northwestern looked principally to decedent's commissions for payment of his debts to the company. In order to recover decedent's $ 237,506 debt purely through setoff against the commission interest, Northwestern would have to accept a monthly *542 payment no larger that the $ 3,800 estimated payment to the wife under the spreadout election. Even if it offset completely each $ 3,800 payment, it would take more than five years for the debt to be repaid. If it offset less of the commission payments, the debt could be recovered over a much longer period, potentially as long as 30 years. This was a debt that was due to Northwestern in cash immediately on decedent's death. Northwestern's right to setoff would appear to be but a secondary means of collecting the debt. The company stated as much in the letter to decedent's wife at his death when it said that "a portion of [the spreadout] payments may be applied to Ray's Company loan balance and other agency indebtedness, depending on how it is decided to repay these obligations". Decedent's gross estate amounted to $ 1,531,748. It is beyond belief that Northwestern expected to collect decedent's $ 237,506 debt to it over the term of the spreadout election when estate assets in that amount could be reached for repayment at once upon decedent's death. Even if petitioner's mortgage lien analogy were not factually flawed, the result petitioner seeks from the analogy does not *543 follow. It is true that the Ohio Code was recently revised to provide that a devisee taking real estate under a devise in a will "has no right of exoneration for the mortgage lien, regardless of a general direction in the will to pay the testator's debts, unless the will specifically provides a right of exoneration that extends to that lien". Section 2113.52(B). But application of that section is limited to mortgage liens on real property. It does not, by its terms, apply to other debts connected with other kinds of property and cannot be read as supporting the application of a like rule to other kinds of property. Instead, it appears to be an exception to the treatment otherwise mandated by an interpretation of decedent's will under the governing Ohio law. The issue here is not so much concerned with the rights of decedent's creditors as it is with decedent's intent, as expressed in his will, in connection with what assets and which beneficiaries are to bear the burden of his debts. Decedent's trust agreement provided for the payment of his debts out of the assets contained in Fund B. There is no indication in the record that decedent intended the debt to Northwestern to *544 be treated any differently than the rest of his obligations. Rather, it would appear from his will and trust agreement that he intended the spreadout payments to be made to the wife free of any encumbrance stemming from his relationship with Northwestern and that he wanted the debt to Northwestern to be payable out of Fund B. In these circumstances, the debt to Northwestern is not chargeable against the interest in the commission payments and does not reduce the amount of that asset includable in the gross estate. See Estate of Preisser v. Commissioner,90 T.C. 767 (1988). Decision will be entered under Rule 155.
Footnotes
1. The issue has been framed by the parties from time to time in terms of "margins" and "fees and other compensation" as well as "commissions" due to the agent from Northwestern. The meaning of the term margin is not defined, nor is the precise nature of the other fees and compensation made clear. Moreover, to make the matter still more confusing, these terms have been used interchangeably at least in part or in an overlapping manner. However, the parties have treated all such items the same as commissions covered by the General Agent's Contract which became payable to the general agent's spouse at his death, and we therefore do the same. ↩
2. The record does not explain how decedent could make such a designation of beneficiaries before the April 1, 1976, effective date of his General Agent's Contract. However, there is no dispute that such designation was effective for purposes of that contract. ↩
3. Section 26 of the General Agent's Contract refers to the terms of policies "of the series issued by the Company on the date of this agreement", presumably the April 1, 1976, effective date of the General Agent's Contract. The life insurance policy in the record is described as containing the "same provisions as the life policies issued by Northwestern * * * on the decedent". However, it is by no means clear that the policy was "of the series issued by the Company on the date of this [General Agent's] agreement". Nonetheless, since the parties treat the policy in the record as that policy which is referred to in the General Agent's Contract, we do the same. ↩
4. As will hereinafter appear, the funds receivable under the financing agreement and which are subject to setoff by the Company were not used exclusively to make advances to agents. ↩