Estate of Frances R. Pollard, Harold K. Burt, Executor, Petitioner v. Commissioner of Internal Revenue, Respondent

Docket No. 5688-66.   Filed August 4, 1969.

*Remsen M. Kinne III*, for the petitioner.
*Rufus E. Stetson, Jr.*, for the respondent.

OPINION

Raum, *Judge*: The Commissioner determined a deficiency in estate tax in the amount of $4,736.61. The principal adjustment giving rise to that deficiency, and the only one in issue, raises the question whether the commuted value of a life estate in the decedent's property commencing at the decedent's death in favor of her surviving husband was deductible as a "claim" against her estate that was contracted "for an adequate and full consideration in money or money's worth." Sec. 2053, I.R.C. 1954. The facts have been stipulated.

The decedent and her husband were married at Windsor, Vt., on July 22, 1960. Each was then nearly 85 years of age, the decedent having been born August 30, 1875, and her spouse July 28, 1875. At the time of the marriage the decedent's assets consisted entirely of intangible personal property valued at approximately $164,000. She had been residing with a cousin at Windsor, Vt., in her cousin's home and owned no residence or furniture and furnishings of her own. The decedent's husband then owned intangible personal property valued at approximately $79,000, and also owned a farm at Hartland, Vt., on which he had his residence and tangible personal property and equipment valued at approximately $35,000, or total assets in the amount of about $114,000. Following the marriage the couple resided at the husband's farm in Hartland.

On July 19, 1960, 3 days prior to the marriage, the decedent and her husband executed an antenuptial agreement which provided in its entirety as follows:

This indenture made this 19th day of July, 1960 by and between Dallas F. Pollard, Burlington, Vermont of the one part; and Frances Osgood of Windsor, Vermont of the other part.

Whereas a marriage is intended to be shortly after the date hereof solemnized between Dallas F. Pollard and Frances Osgood, and whereas each of the parties hereto is possessed of property and has made a frank and full disclosure to the other in relation to its character and amount, and they have been advised of

their respective rights therein in the event of their marriage in the absence of any agreement between them.

Now this indenture witnesseth that each of them, the said Dallas F. Pollard and Frances Osgood hereby declares it to be his and her intention and desire that during their marriage each of them shall be and continue completely independent of each other as regards the enjoyment and disposal of all property whether owned by either of them at the commencement of the marriage or coming to them or either of them during the marriage and each of them hereby agrees with the other in view and consideration of the said proposed marriage that so far as legally is possible by their private act, declaration and agreement all property belonging to either of them at the commencement of the marriage or coming to either of them during the marriage shall be and is enjoyed by him or her and be subject to the dispositions of him or her as his or her separate property, and after the death of either it shall be free from any claims by the other on account of dower, curtesy or other statutory right in the same manner if the said proposed marriage had never been celebrated. It is further understood and agreed that any property which is placed in their joint names during marriage shall upon the death of either party belong to the other party thereof.

It is further the understanding and agreement that although each of the parties hereto desire to dispose of their respective property in a manner free of any claim of the other that said property shall not be disposed of while either of said parties hereto is alive, and that the survivor of the parties hereto shall have the right to the income from the property of the deceased partner, but will have no absolute right therein.

IN WITNESS WHEREOF, the parties hereto set their hands and seal on the day and year first above written.

[Signatures omitted.]

At the time of their marriage the decedent and her husband were each in good health. She then had a life expectancy of 7.5 years, and his life expectancy was 5.7 years.

The decedent died on October 22, 1962, survived by her husband. Her will, executed on November 24, 1959, gave all her property to various friends and relatives; it was duly proved and allowed in the District of Hartford Probate Court at Woodstock, Vt. The husband did not file formal claim against the estate in the Probate Court. However, the estate has apparently not been distributed, and the income therefrom has been paid out from time to time to the husband in accordance with the antenuptial agreement.

The estate tax return claimed a $17,645.79 deduction under "Debts of Decedent" in respect of the alleged value of the life interest of the surviving husband under the antenuptial agreement. The value of that life interest was computed as follows:

| | |
|---|---:|
| Gross probate assets | $163,006.93 |
| Less exp. of admin | 3,460.95 |
| Net probate residue | 159,545.98 |
| Life estate factor (Dallas F. Pollard 87 at decedent's death) | .11060 |
| (Amount of deduction) | 17,645.79 |

The Commissioner disallowed the deduction.

The statutory basis for the deduction sought by petitioner is section 2053(a)(3) of the 1954 Code which grants a deduction for "claims" against the estate; but when the claims are founded on an agreement or promise the deduction is limited by section 2053(c)(1)(A) to the extent that such claims were contracted "for an adequate and full consideration in money or money's worth." [1] And these provisions are further limited by section 2043(b) which states that the relinquishment of dower, curtesy, or other marital rights in a decedent's property "shall not be considered to any extent a consideration 'in money or money's worth.'" [2] We hold that the husband's contractual rights under the antenuptial agreement fail to qualify for deduction as a claim contracted "for an adequate and full consideration in money or money's worth."

In the first place, the antenuptial agreement provides that the property of each "shall be free from any claims by the other on account of dower, curtesy or other statutory right." And although the provision for what in substance is a life estate in favor of the survivor appears in the succeeding paragraph, it is plain that the contract as a whole represents but a single package of mutual undertakings. See 6 Williston, Contracts, sec. 859 (3d ed.), where it was said:

Sec. 859. General Dependency and Particular Dependency.* A bilateral contract may consist of a promise on each side to do one thing, or it may consist of several promises on either or on both sides. Whether a transaction imports a single contract or several contracts depends not on the number of promises or the number of things promised, but on whether there has been a single expression of mutual assent to all the promises as a unit or whether the parties expressed their assent separately to the various promises. It may be assumed that if the promises, though more than one on each side, constitute but a single contract, there is a general dependency between all the promises on one side and all the promises on the other, that is, all the promised performances on both sides must be regarded as the agreed exchange for each other.[1] * * * [Footnotes omitted.]

[1] SEC. 2053. EXPENSES, INDEBTEDNESS, AND TAXES.
(a) GENERAL RULE.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

*  *  *  *  *  *  *

(3) for claims against the estate, and

*  *  *  *  *  *  *

(c) LIMITATIONS.—
(1) LIMITATIONS APPLICABLE TO SUBSECTIONS (A) AND (B).—
(A) CONSIDERATION FOR CLAIMS.—The deduction allowed by this section in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * *
[2] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.
(b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

These comments are particularly applicable here. The contract before us is a simple one, containing closely related provisions in respect of the property rights of the parties, and it seems clear that it consists of but a "single contract" in which the various obligations are mutually interdependent. Accordingly, one of the elements of consideration herein consists of a waiver of dower, curtesy, or other statutory right—a type of consideration which section 2043(b) explicitly states "shall not be considered to any extent a consideration 'in money or money's worth.' "

However, even if the paragraph giving an income interest to the survivor in the property of the decedent is severable, we are of the opinion that the reciprocal obligations thus assumed by the contracting parties do not qualify as "adequate and full consideration in money or money's worth." To be sure, the mutual promises undoubtedly constitute consideration under the law of contracts. But the statute requires more. Indeed the statute represents the end product of a series of amendments that successively narrowed the scope of deductible claims. The history of the applicable statutory provisions was outlined as follows by the Supreme Court in *Taft* v. *Commissioner*, 304 U.S. 351, 356:

The Revenue Act of 1916 permitted the deduction of the amount of claims against the estate "allowed by the laws of the jurisdiction * * * under which the estate is being administered." [5] The Acts of 1918 and 1921 contain like provisions.[6] * * * The Act of 1924 altered existing law and authorized the deduction of claims against an estate only to the extent that they were "incurred or contracted bona fide and for a fair consideration in money or money's worth." [8] Congress had reason to think that the phrase "fair consideration" would be held to comprehend an instance of a promise which was honest, reasonable, and free from suspicion whether or not the consideration for it was, strictly speaking, adequate.[9] The words "adequate and full consideration" were substituted by § 303(a)(1) of the Act of 1926. There must have been some reason for these successive changes. It seems evident that the purpose was to narrow the class of deductible claims, and we are not at liberty to ignore this purpose. [Footnotes omitted.]

See also *United States* v. *Mitchell*, 74 F. 2d 571, 574 (C.A. 7).

The purpose of these provisions as finally formulated was clear enough. It was to prevent the making of what are in substance tax-free testamentary dispositions through the medium of contractual claims. As was stated in *Carney* v. *Benz*, 90 F. 2d 747, 749 (C.A. 1):

The purpose of this section in the light of its legislative history [see *United States* v. *Mitchell* (C.C.A.) 74 F. (2d) 571] was to prevent deductions, under the guise of claims, of what were in reality gifts or testamentary distributions. * * * [Brackets in original.]

See also *Commissioner* v. *Porter*, 92 F. 2d 426, 428 (C.A. 2); *Estate of Herbert C. Tiffany*, 47 T.C. 491, 500; *Estate of John M. Goetchius*,

17 T.C. 495, 505–506. And when the question in the present case is examined in the light of that purpose, the answer is obvious.

What we have here in essence is simply a reciprocal undertaking that upon the death of the first contracting party the survivor is to have a life estate in the property of the decedent. This is in substance merely a contractual arrangement for a testamentary disposition not within the intendment of the statute. Such reciprocal arrangement "for the benefit of the natural object of each * * * [promisor's] bounty," does not qualify as the kind of consideration required by the statute, cf. *Guenzel's Estate* v. *Commissioner*, 258 F. 2d 248, 252 (C.A. 8).

If the statute were to be construed otherwise there would be provided a facile means of avoiding estate taxes through such reciprocal agreements between persons who are the natural objects of each other's bounty.[3] Yet the very purpose of the statute was to prevent such result. Cf. *Estate of Herbert C. Tiffany*, 47 T.C. at 500. And it is a recognized canon of statutory construction, particularly applicable with respect to the phrase "adequate and full consideration in money or money's worth," that the legislative language will not be construed so as to "encourage tax avoidance," *Merrill* v. *Fahs*, 324 U.S. 308, 313, or to "open wide the door for evasion," *Commissioner* v. *Wemyss*, 324 U.S. 303, 308.[4] We do not, of course, find that the antenuptial agreement before us was executed in order to defeat estate taxes. Indeed, the normal inferences from this record would appear to be otherwise. But the fact that the tax avoidance motive may have been absent here is irrelevant, because it is the substance of the arrangement as a potential device for defeating the estate tax that is of controlling significance. Cf. *United States* v. *Estate of Joseph P. Grace*, 395 U.S. 316, 322 *et seq.*

*Decision will be entered for the respondent.*

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] Of course, where the contracting parties are husband and wife a testamentary gift of one-half the decedent's property might qualify for the marital deduction. But no such alternative route would be available to others, like siblings, and in any event the life estate herein does not so qualify under sec. 2056(b).

[4] Random examples in other areas of tax law where statutes have been applied so as not to open the door to tax avoidance may be found in *Woolford Realty Co.* v. *Rose*, 286 U.S. 319, 329–330; *Carbon Steel Co.* v. *Lewellyn*, 251 U.S. 501, 504; *Braden Steel Corp.* v. *Commissioner*, 78 F. 2d 808, 810 (C.A. 10); *Commissioner* v. *S. A. Woods Mach. Co.*, 57 F. 2d 635, 636 (C.A. 1).