ESTATE OF HERBERT R. HERRMANN, DECEASED, EDWARD I. HERRMANN AND LAWRENCE A. HERRMANN, CO-EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Herrmann v. Commissioner
Docket No. 17791-92
United States Tax Court
T.C. Memo 1995-90; 1995 Tax Ct. Memo LEXIS 90; 69 T.C.M. (CCH) 1995; March 2, 1995, Filed *90 Decision will be entered under Rule 155. By will, and pursuant to a prenuptial agreement, decedent left to his wife an interest in his cooperative apartment. P deducted the value of that interest as a claim against the estate under sec. 2053, I.R.C., in calculating the taxable estate. R disallowed the deduction as a claim not contracted bona fide and for an adequate and full consideration in money or money's worth. Held: R's disallowance is sustained. P failed to show adequate and full consideration in money or money's worth. For petitioner: Frank H. Connelly, Jr.
For respondent: George Soba. HALPERN
HALPERN
MEMORANDUM OPINION HALPERN, Judge: By notice of deficiency dated May 11, 1992, respondent determined a deficiency in estate tax of $ 187,394. Certain issues have been settled. The sole remaining issue is whether, in determining the taxable estate, petitioner may deduct as a claim against the estate the value of an interest in a cooperative apartment left by the decedent to his surviving spouse. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at the time of decedent's death, and all Rule references are to the Tax Court *91 Rules of Practice and Procedure. Background
This case has been submitted for decision without trial pursuant to Rule 122. The parties have stipulated certain facts, which are so found. Stipulation
In pertinent part, the facts stipulated by the parties are as follows: FIRST STIPULATION OF FACTS
* * * 1. The decedent, Herbert R. Herrmann, died on March 26, 1988. 2. At the time of his death, the decedent resided at apartment 15-D, 303 East 57th Street, New York, New York. 3. An estate tax return for the petitioner was filed with the respondent on June 28, 1989. * * * 4. On May 11, 1992, respondent issued a notice of deficiency relating to petitioner's estate tax liability. 5. On August 7, 1992, petitioner filed a Petition with the United States Tax Court contesting the following adjustments set forth in the notice of deficiency: a. Respondent's disallowance of a deduction for the interest in the decedent's cooperative apartment, apartment 15-D, 303 East 57th Street, New York, New York, given to the decedent's surviving spouse, Harriet Boris Herrmann, (Harriet); * * * Apartment 15-D, 303 East 57th Street, New York, New York
10. On November 13, 1984 *92 the decedent and Harriet entered into a prenuptial agreement, (the "Agreement"). * * * 11. Subsequent to entering into the Agreement, decedent and Harriet married one another. 12. Decedent and Harriet were married to one another and living together at the time of decedent's death. 13. The Agreement required the decedent to provide Harriet with an interest in the apartment in his Last Will and Testament, provided certain conditions were met. 14. In his Last Will and Testament, decedent provided Harriet with the interest in the apartment required by the Agreement. * * * 15. At the time of decedent's death, the Agreement was valid and binding between decedent and Harriet. 16. At the time of decedent's death, the conditions necessary for Harriet to receive her interest in the apartment called for under the Agreement and decedent's Last Will and Testament were met. 17. The fair market value of the apartment as of decedent's date of death was $ 340,000. 18. The value of Harriet's interest in the apartment as of decedent's date of death was $ 250,000. Prenuptial Agreement
The prenuptial agreement referred to in paragraph 10 of the stipulation states as follows: *93 AGREEMENT, made this 13th day of November, 1984, between HARRIET BORIS, residing at 2 West Mill Drive, Great Neck, New York (hereinafter sometimes called "BORIS") and HERBERT R. HERRMANN, residing at 303 East 57th Street, New York, New York (hereinafter sometimes called "HERRMANN"). WITNESSETH: WHEREAS, the parties intend to marry one another in New York State on or about November [blank], 1984 ("the marriage") and WHEREAS, each of the parties is the owner of certain tangible and intangible property; and WHEREAS, each of the parties desires to waive (except to the extent set forth to the contrary in this Agreement) his or her respective rights in the property of the other; and WHEREAS, each of the parties wishes to confirm his or her respective prior agreement and representations to the other that in the event the marriage shall be terminated by matrimonial action (as such term is defined in the Domestic Relations Law of the State of New York) in any court of competent jurisdiction, neither party shall have or make any claim against the other for alimony, support, maintenance, a distributive or other property award, or any property distribution of any kind or nature; and *94 WHEREAS, the parties mutually desire to avoid any disputes or misunderstandings that might otherwise arise in respect to property owned by either of them, whether acquired before, during or after the marriage. NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties agree as follows: 1. After the date of the marriage, each of the parties shall continue to own his or her property separately and neither party shall acquire any interest in the property of the other by reason of the marriage. "Property" shall be defined for the purposes of this paragraph as: (i) Property owned by a party as of the date of this Agreement (except any property which may have been heretofore acquired by the parties as joint tenants); and (ii) property which may hereafter be acquired by either party (except any property which may hereafter be acquired by the parties as joint tenants or tenants by the entirety) whether such property shall be considered "marital" or "separate" property under the laws of New York. Each party shall have the absolute and unrestricted right to dispose of his or her property free from any claim that may be made *95 by the other by reason of the marriage, and with the same effect as if the marriage had not occurred. A schedule of Boris's property as of November 1, 1984 is attached hereto as Exhibit A and a schedule of Herrmann's property as of November 1, 1984 is attached hereto as Exhibit B. Each such schedule has been reviewed by the parties and they acknowledge that they are both fully familiar with such schedules. 2. Each party acknowledges, represents and warrants that each of them possesses adequate independent means and income for his or her support and maintenance, present and future, and in keeping with his or her accustomed mode of living, reasonable requirements and station in life. Except as provided for in paragraph 3 hereof, each of the parties hereby relinquishes and waives all claims whatsoever against the other for alimony, support and maintenance under the laws of New York and any other state and agrees that if the marriage shall terminate by matrimonial action, neither party shall have any claim against the other for any of the same; provided, however, that such relinquishment and waiver shall not be deemed to apply to the right of either party to demand performance of *96 all of the undertakings of the other party which are provided for in this Agreement. 3. The parties hereby agree to pool their respective incomes and pay their living expenses out of said fund. The excess income after paying said living expenses and income taxes attributable to said income shall be retained in the parties joint names with the right of survivorship. 4. In the event the parties separate or divorce for any reason, Herrmann agrees during his life, to pay Boris $ 5,000 per year for ten (10) years as a contribution towards her support and maintenance until her death or remarriage whichever event first occurs. 5. Each party hereby relinquishes and waives all claims whatsoever against the other for a distributive or other property award or any property distribution of any kind or nature in respect to any property acquired by the other or acquired by the parties jointly (except as joint tenants with right of survivorship or tenants by the entirety) whether before or during the marriage except that Herrmann hereby agrees that in the event the parties are married and living together at the time of his death he shall designate Boris the beneficiary of his pension and profit *97 sharing plan which shall be no less than its current value of $ 50,000 and provide in his will that Boris shall be entitled to live in Herrmann's cooperative apartment 15D located at 303 East 57th Street, New York City or any substitute apartment or house Herrmann may own at the time of his death until her death or remarriage (remarriage shall include living with another man on a regular basis for a period of six months or longer), whichever first occurs. Boris shall during this period pay all of the expenses in connection with her occupancy of the apartment to the owner. As of this date, the maintenance is $ 1200 per month. Except as to the provisions of this paragraph relating to Herrmann's pension and profit sharing plan and cooperative apartment, each party agrees never to seek, through judicial proceedings or otherwise, any such award or distribution with respect to any property acquired by the other or acquired by the parties jointly (except as joint tenants with right of survivorship or tenants by the entirety) whether before or during the marriage. 6. Except as herein provided, each party hereby relinquishes and waives any and all right, title, interest and claims (other *98 than claims arising under this Agreement) he or she may have against the property and estate of the other, whether by virtue of the marriage or the death of the other, including (without limitation) any statutory allowance, personal right of election against the Will of the other and any rights he or she may have in or against the estate of the other in the event of intestacy, whether the same shall arise under the laws of New York or under the laws of any other jurisdiction granting the same or similar rights to surviving spouses; provided, however, that nothing herein contained shall be deemed to preclude either party from acquiring any interest in the property or estate of the other pursuant to Will or any other instrument or document at any time executed by the other or any third party, and nothing herein contained shall be deemed to preclude either party from executing any such instrument or document in favor of the other. The terms "property" and "estate", as used in this Agreement, include (but are not limited to) tangible and intangible property, both real and personal and all interests therein, devises, bequests and legacies, the proceeds of life insurance, and all interests *99 in testamentary and inter vivos trusts, whether as income beneficiary or remainderman, and without regard as to who shall have created such trust. 7. The parties wish to record that nothing herein contained shall be deemed or construed to express an intention by either party to seek or obtain a divorce or separation, or to consent thereto or acquiesce therein. 8. The parties shall each be responsible for the payment of taxes attributable to their respective incomes and the settlement of all deficiency assessments, interest and penalties arising therefrom. In the event the parties file a joint income tax return each hereby indemnifies and holds the other harmless from any claims on account of any liability for additional tax, interest and/or penalty attributable to their respective incomes for any taxable year for which the parties have filed joint income tax returns. 9. The fact that any provision or provisions of this Agreement shall be invalid for any reason whatsoever shall not have the effect of rendering invalid any of the remaining provisions of this Agreement. 10. This Agreement is being delivered and is intended to be performed in the State of New York and shall be *100 construed and enforced in accordance with the laws of such state and shall become effective when and only if the marriage is performed. 11. Each party confirms that he or she has entered into this Agreement freely and without coercion or undue influence and has been separately represented by legal counsel in the preparation and execution of this Agreement, Boris having been represented by Stern, Fixler & Wiener and Herrmann having been represented by Samuel Weisman. 12. Each party agrees to execute such instruments and documents as may be required in order to effectuate the purposes and intent of this Agreement. 13. This Agreement shall be binding upon and inure to the benefit of the parties and their respective heirs, assigns and personal representatives. 14. The waiver by a party of a breach of any provision of this Agreement by the other shall not constitute the waiver of any subsequent breach of the same or any other provision hereof by such other party. 15. This Agreement contains the entire agreement between the parties, and the parties, each of himself and herself, confirms that there are no representations or warranties not contained herein. 16. No modification, *101 waiver or termination of any of the provisions of this Agreement shall be valid or binding unless in writing and executed with the same formality as this Agreement. In Witness whereof, the parties hereto have executed this Agreement as of the day and year first above written. Witness: /S/ Harriet Boris
/S/ Hubert R. Herrmann
EXHIBIT A
I, Harriet Boris, state that the schedule set forth below reveals my tangible and intangible property as of November 1, 1984: Certificates of Deposit
$ 250,000.00
Mortgage terminating 1986
Income - approximately
$ 25,000.00
/S/ Harriet Boris EXHIBIT B
I, Herbert R. Herrmann, state that the schedule set forth below reveals my tangible and intangible property as of November 1, 1984: Cooperative apartment located
at 303 East 57th Street -
approximate value
$ 300,000
Condominium Unit located in
Hollywood, Florida -
approximate value
$  80,000
mortgage
$  30,000
Net approximate value
$  50,000
Parking lot in New Rochelle
approximate value
$  50,000
Commercial Real Estate
located in New Rochelle in
which Pace Oldsmobile is
located
$ 800,000
mortgage
$ 300,000
Net approximate value
$ 500,000
Pace Oldsmobile Inc. -
approximate value
$ 500,000
Securities-approximate value
$ 150,000
Retirement and/or profit
sharing plan - approximate
value
$  50,000
Income in 1984 in excess of
$ 100,000
*102 /S/ Herbert R. Herrmann Decedent's Will
In his last will and testament, among other things, decedent made certain specific bequests to his sons and on behalf of his grandson and granddaughter. He bequeathed the residue of his estate to his sons. He provided for his wife as follows: FIFTH: If at the time of my death I am married to and living together with HARRIET BORIS then I direct that she shall be entitled, for the rest of her life or until her remarriage, to occupy my cooperative apartment No. 15D located at 303 East 57th Street, New York City, or any substitute apartment or house which I may own at the time of my death, with the understanding that she shall during the period of her occupancy pay all the expenses incident to her occupancy of the apartment including maintenance, taxes, utility charges and the like. Upon her death or remarriage or if she shall default in paying any of said expenses, my Executors shall retake possession of said premises which shall become part of my residuary estate to be disposed of in accordance with article Sixth hereof. Residence
At the time the petition was filed, the coexecutors were residents of New York. Discussion
*103 I. Issue
In the estate tax return filed with respondent, petitioner included as property of the gross estate the interest decedent possessed in cooperative apartment 15-D, located at 303 E. 57th Street, New York, New York (the apartment). By the terms of a prenuptial agreement (the agreement), decedent had promised to his wife, Harriet, that, subject to certain conditions, she would receive an interest in the apartment pursuant to decedent's will. By his will, decedent carried out that promise. Petitioner included the apartment in the gross estate at a value reduced to reflect the interest given to Harriet (sometimes Harriet's interest or her interest). Respondent disallowed the reduction in value taken to reflect Harriet's interest. The parties have treated that reduction as if it were a claim against the estate. The Federal estate tax is imposed on the taxable estate. Sec. 2001. In pertinent part, for purposes of determining the taxable estate, section 2053 allows a deduction for claims against the estate: (a). General Rule. -- For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the *104 gross estate such amounts -- * * * (3) for claims against the estate, * * * * * * as are allowable by the laws of the jurisdiction * * * under which the estate is being administered. The deduction allowed by section 2053(a)(3) is limited by section 2053(c)(1)(A): The deduction allowed by this section in the case of claims against the estate * * * shall, when founded on a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth; * * * With regard to the requirement that the consideration must be in "money or money's worth", section 2043(b)(1) provides: For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or courtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth". Respondent justifies her disallowance on three grounds: First, the transfer to Harriet of her interest, taking place on account of decedent's death, on the condition that Harriet then be married to decedent, is testamentary (donative) *105 in nature: "The record contains no evidence that Harriet bargained for, and obtained, the interest in the Apartment in an arms length and bona fide sale." Second, in consideration of the agreement to transfer to Harriet her interest, Harriet waived certain "marital" rights, which, because of section 2043(b)(1), cannot be considered to any extent a consideration in money or money's worth. Third, even if the rights that Harriet waived in consideration of the agreement to receive her interest did not constitute marital rights, petitioner has not carried its burden of showing that the waiver of such rights constituted an adequate and full consideration in money or money's worth for the agreement to convey to Harriet her interest. Petitioner takes exception on all counts. In particular, petitioner argues that (1) the right that Harriet waived in consideration of the promise to transfer to her her interest was the right to receive an "equitable distribution" under New York law, which is not a marital right within the meaning of section 2043(b)(1); and (2) decedent received adequate consideration. Petitioner bears the burden of proof. Rule 142(a). II. Analysis
A. Introduction
*106 We need not address the first two grounds raised by respondent because we agree with respondent that petitioner has failed to carry its burden of proving the adequacy of what decedent received in consideration of his agreement to leave to Harriet her interest in the apartment. B. The Agreement
In consideration of the various promises and waivers given by decedent to Harriet under the agreement, decedent received various promises and waivers in return. Among the waivers received by decedent were waivers of Harriet's rights to (1) "alimony, support and maintenance", (2) "a distributive or other property award or any property distribution of any kind or nature", and (3) any and all right, title, interest and claims * * * he or she may have against the property and estate of the other, whether by virtue of the marriage or the death of the other, including (without limitation) any statutory allowance, personal right of election against the Will of the other and any rights he or she may have in or against the estate of the other in the event of intestacy * * * Petitioner characterizes those waivers as dealing with (1) "spousal support", (2) "equitable distribution", and (3) *107 "testamentary rights". For convenience, and without intending any legal conclusion thereby, we will adopt petitioner's characterizations of the subjects of those waivers. C. Testamentary Rights
There can be no argument that Harriet's waiver of any testamentary rights that she might acquire on account of her marriage to decedent would fail to qualify as a consideration in money or money's worth for purposes of section 2053(a)(3) and (c)(1)(A) on account of section 2043(b)(1). Estate of Glen v. Commissioner, 45 T.C. 323, 340-342 (1966). D. Separate Provisions
Petitioner argues that the agreement contains separate provisions pertaining to spousal support, to equitable distribution, and to testamentary rights. To petitioner: "It seems clear that the life estate decedent granted * * * [Harriet] was in exchange for her waiver of her right to obtain an equitable distribution of his property in the event of a divorce." "The promises [life estate for waiver] * * * are obviously the quid pro quo for one another." Respondent's argument goes as follows: The Agreement evidences a single contract between Harriet and * * * [decedent], with mutually *108 interdependent obligations. Each of the items of consideration given by one constitutes part of the consideration for all of the items of consideration given by the other. Estate of Pollard, 52 T.C. [741] at 743-744 [1969]. The Agreement specifically states that it is made "in consideration of the promises and mutual covenants and agreements" contained in the Agreement. Therefore, Harriet received her interest in the Apartment in part for her relinquishment of her interests in * * * [decedent's] estate, in part for her relinquishment of her interests in * * * [decedent's] property during his life in the event of a separation or divorce, and in part for a relinquishment of her support rights in the event of a separation or divorce. E. Adequate and Full Consideration in Money or Money's Worth
Respondent argues that petitioner has provided no evidence that Harriet's waiver of her rights to equitable distribution constituted adequate and full consideration in money or money's worth for decedent's agreement to convey to Harriet her interest in the apartment. Respondent argues that, notwithstanding the placement of the promise to convey an interest *109 in the apartment in paragraph 5 of the agreement, the promise was testamentary in nature and was in consideration of Harriet's waiver of the testamentary rights discussed in paragraph 6 of the agreement. Petitioner's response is as follows: The actual consideration is expressed in the very paragraph [5] containing the waiver [of rights to equitable distribution] and it requires an extraordinarily strained construction of the document to claim that the consideration was actually something set forth in some other paragraph. F. Single Undertaking
In Estate of Pollard v. Commissioner, 52 T.C. 741 (1969), we faced the question of whether a provision in an prenuptial agreement granting the surviving spouse what in substance was a life estate was separate from a provision providing mutual waivers of marital rights. We stated that, although the provision for the life estate appeared in a separate paragraph, it was plain to us that the contract as a whole represented but a single package of mutual understandings. Id. at 743. Likewise, here, we believe that the agreement, as a whole, represents a single package of mutual *110 understandings, and we so find. What we said in Estate of Pollard is apt: The contract before us is a simple one, containing closely related provisions in respect of the property rights of the parties, and it seems clear that it consists of but a "single contract" in which the various obligations are mutually interdependent. * * * [Id. at 744. [1]] G. Consideration
Accordingly, in consideration of his promises and waivers under the agreement, decedent obtained various promises and waivers, including a waiver by Harriet of testamentary rights. That waiver fails to qualify as consideration in money or money's worth for purposes of section 2053(a)(3) and (c)(1)(A) on account of section 2043(b)(1). We agree with respondent that petitioner has failed to establish the actual and apportioned value of that waiver (or the other *111 waivers made by Harriet). Even were we to accept that the waivers by Harriet of spousal support and equitable distribution were not waivers of marital rights within the meaning of section 2043(b)(1), petitioner has failed to show that decedent's agreement to transfer to Harriet her interest in the apartment was supported by an adequate and full consideration in money or money's worth. Petitioner has presented insufficient evidence upon which a reasonable apportionment of any part of the value of his promise to transfer to Harriet her interest could be made to her waiver of spousal support and equitable distribution rights as distinguished from her waiver of testamentary rights. Indeed, considering the agreement and decedent's will together, we cannot help but conclude that the predominant economic benefit to decedent from entering into the agreement was testamentary. Decedent was over 60 years of age when he and Harriet married. The schedules attached to the agreement show that, prior to their marriage, the values of decedent's and Harriet's assets were $ 1.7 million and $ 275,000, respectively. Decedent's will shows an intent to make his children the primary beneficiaries of *112 his estate. Petitioner has not shown that decedent faced a substantial risk that Harriet would obtain a substantial interest in his assets on account of her marriage to decedent. The domestic relations law of the State of New York provides for the equitable distribution of marital property upon the dissolution of a marriage by divorce. See N.Y. Dom. Rel. Law sec. 236B (McKinney 1986). Under that law, property is categorized as either marital or separate. Id. Marital property is defined as "all property acquired by either or both spouses during the marriage." Id. subsec. (1) par. (c). Marital property is distributed equitably, taking the parties' needs into account. Rodgers v. Rodgers, 470 N.Y.S.2d 401 (App. Div. 1983). Separate property, which is generally property acquired before marriage, N.Y. Dom. Rel. Law sec. 236B(1)(d), is not distributed between the parties. However, the increase in value of separate property through the contributions of the nonowner spouse is distributed as marital property. Price v. Price, 511 N.Y.S.2d 219 (1986). The nonowner spouse has the burden of proving his or her contribution *113 and the value thereof. Wood v. Wood, 465 N.Y.S.2d 475 (Sup. Ct. 1983). Petitioner has not proven that decedent faced a substantial risk to his property under the domestic relations law of the State of New York on account of his marriage to Harriet. On that basis, this case is distinguishable from Carli v. Commissioner, 84 T.C. 649, 659 (1985), where the decedent left his surviving spouse an interest in his house in consideration of her relinquishing her community property interest in his earnings: "The decedent thus gave up nothing by his waiver of a community interest in Jennie's income but received a present economic benefit under the agreement through Jennie's waiver of her community interest in his earnings." New York is not a community property State and Harriet did not waive an interest in decedent's income. Indeed, pursuant to paragraph 3 of the agreement, the decedent's and Harriet's incomes were to be pooled and, after certain expenses were paid, the remainder was to be owned jointly. We believe that the promise to convey to Harriet an interest in the apartment was a testamentary substitute and not in consideration *114 of a waiver of rights to equitable distribution. Harriet received an interest in the apartment if, and only if, she was married to decedent when he died. There is insufficient evidence for us to conclude that Harriet's waiver of her rights to support and equitable distribution constituted adequate and full consideration in money or money's worth to support both decedent's mutual waiver and his promise to convey to Harriet her interest in the apartment. As previously stated, decedent apparently had more to lose than Harriet, and the exchange has the distinct flavor of a testamentary substitute. H. Conclusion
Petitioner has failed to carry its burden of proving that the testamentary transfer to Harriet of her interest in the apartment was in discharge of a claim against the estate contracted bona fide and for an adequate consideration in money or money's worth, and we so find. Respondent's determination of a deficiency in estate tax is sustained to that extent. Decision will be entered under Rule 155. Footnotes
1. The reference in the quoted language to a "single contract" is a reference to the use of that term in 6 Williston, Contracts, sec. 859 (3d ed. 1962).↩