T.C. Memo. 2012-314

UNITED STATES TAX COURT

ESTATE OF SYLVIA E. BATES, DECEASED, SHERI BEERSMAN,
EXECUTOR AND TRUSTEE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1193-10.                    Filed November 7, 2012.

<u>David W. Riley</u>, for petitioner.

<u>Elaine Tamiko Fuller</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  After concessions, the issues for decision are whether

decedent's estate is entitled to certain deductions, must include in the gross estate

[*2] the value of life insurance proceeds, and is liable for section 6651(a)(1) and (2) additions to tax.[1]

## FINDINGS OF FACT

In the 1950s Sylvia E. Bates (decedent) began purchasing real estate in southern California. She managed and rented several pieces of real estate and held others for investment. On November 11, 1997, decedent, the widow of Robert M. Bates, executed a will and testament and, on March 19, 1998, executed a codicil. The will and codicil (collectively, first will) provided that her granddaughter, Sheri Beersman (Sheri), would serve as executor. In addition, the first will provided that estate assets would be used to pay expenses (i.e., decedent's personal debts, funeral expenses, and administration expenses) and any remaining assets would fund the Robert M. Bates Family Trust (Family Trust), as restated and amended on November 11, 1997 (First Trust). The First Trust provided that, upon decedent's death, Sheri would serve as trustee and trust property would be distributed evenly among decedent's three grandchildren: Sheri, Kenneth Cable (Kenneth), and Scott Cable (Scott). In addition, the First Trust provided for

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[**\*3**] several bequests including a $100,000 bequest to Reggie Lopez, an individual decedent trusted and with whom she had an extremely close relationship.

In 2004 decedent was diagnosed with Alzheimer's disease and began to pay Mr. Lopez monthly to assist her in performing a variety of tasks. Decedent fully paid Mr. Lopez for all services rendered. During this time Mr. Lopez rented a house from decedent and timely remitted rent payments. On January 11, 2005, decedent executed a second will and testament (second will) and an amended and restated Family Trust (Second Trust). The second will and the Second Trust, which substantially altered the first will and the First Trust, provided that Mr. Lopez would serve as executor and trustee, Scott would receive all of decedent's personal property, and trust interest income would be distributed evenly between Scott and Mr. Lopez.[2]

On February 18, 2005, decedent died a resident of California. At the time of her death she held a life insurance policy for which she had the power to change beneficiaries. Shortly after her death, Mr. Lopez, the sole beneficiary of the policy, received the $23,113 of insurance proceeds. On February 22, 2005, Sheri submitted the first will to the Orange County Superior Court (superior court) for probate. On

---

[2]The Second Trust also provided for bequests to Scott's children.

**[*4]** March 1, 2005, Mr. Lopez submitted the second will to the superior court for probate. Thereafter, Sheri and Kenneth petitioned the superior court requesting invalidation of the Second Trust, removal of Mr. Lopez as trustee, appointment of a temporary trustee, and damages for elder abuse. The superior court, on March 2, 2005, suspended Mr. Lopez's trustee powers, appointed Larry Eason temporary trustee, ordered Mr. Lopez to surrender any Family Trust property, and issued a temporary restraining order prohibiting Mr. Lopez "from taking any action whatsoever" with respect to any Family Trust assets. The superior court also appointed Sheri special administrator of decedent's estate (estate) and issued her letters of administration which provided that she could find estate assets but was "not authorized to take possession of money or any other property." While serving as special administrator, Sheri sought and acquired approval from the superior court to have her travel expenses paid from estate assets.

Sheri and Kenneth hired Jim Caviola to represent their interests in the trust litigation and in the probate of the estate. Mr. Caviola, who had previously provided legal services to decedent, did not have tax expertise. Scott, who was incarcerated at Moberly Correctional Center in Missouri, hired Forrest Oberg, a private investigator, to monitor the trust litigation. Mr. Oberg made numerous trips to California and Moberly Correctional Center.

**[\*5]**  In 2005 the California Probate Code provided a presumption that "no provision, or provisions, of any instrument shall be valid to make any donative transfer to * * * [a] care custodian of a dependent adult who is the transferor." See Cal. Prob. Code secs. 21350(a)(6), 21351(d) (West 2011).  On August 31, 2005, the superior court's probate division (probate division) determined that Mr. Lopez, though unlicensed, was a care custodian pursuant to Cal. Prob. Code sec. 21350(a)(6).  This determination effectively invalidated the second will and the Second Trust and Mr. Lopez's bequest pursuant to the First Trust.  Shortly thereafter, the Supreme Court of California began review of whether a bequest to an unlicensed care custodian was subject to a presumption of invalidity.  This review effectively vacated the Probate Division's determination and restored the presumption of validity to the second will and the Second Trust and Mr. Lopez's bequest pursuant to the First Trust.  On November 14, 2005, Mr. Lopez again submitted the second will for probate and challenged the validity of the first will.

In December 2005 Sheri and Kenneth settled all litigation with Mr. Lopez. The superior court approved a settlement agreement, invalidated the Second Trust, and decided that Mr. Lopez was entitled to receive $575,000 from the Family Trust  in full satisfaction of any claim relating to the First Trust or the Second Trust.  After receiving $300,000 of the $575,000 settlement payment, Mr. Lopez

[*6] surrendered any right to sue Sheri or Kenneth individually.  Thereafter, Mr. Lopez received the remainder of the settlement payment.

Sheri consulted with Eric Anthony Gronroos, a tax accountant, and Mr. Caviola, about her authority and the obligation to file a Federal estate tax return.  Mr. Gronroos informed Sheri that it was necessary to file a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (estate tax return), and determine who had authority to do so.  The estate tax return was due November 18, 2005.  Mr. Caviola did not discuss tax matters with Sheri but told her that, pursuant to her letters of administration, she had the authority only to find estate assets.  After receiving this advice, Mr. Gronroos and Sheri concluded that she could not file the estate tax return.  On February 7, 2006, Sheri was issued permanent general administration orders which granted her authority to administer the estate (e.g., sell assets, pay expenses, and file tax returns).

In September 2006, after selling real estate, the estate had sufficient funds to pay expenses.  On October 24, 2006, Sheri, as executor and trustee, filed decedent's estate tax return, accompanied by Form 4768, Application for Extension of Time to File a Return and/or Pay U.S. Estate (and Generation-Skipping Transfer) Taxes, and paid the amount of tax reported on the return.  The estate reported that Sheri, Scott, Kenneth, and Mr. Lopez were beneficiaries and

[*7] deducted, as administration expenses, certain payments to Mr. Caviola, Mr. Eason, and Sheri. The estate also deducted, as administration expenses, $498,113[3] as "FUNDS PAID TO REGGIE LOPEZ IN EXCESS OF BEQUEST BY DECEDENT IN SETTLEMENT OF TRUST CONTEST LAWSUIT TO SETTLE TITLE TO BENEFICIARIES" and $21,444 as "SCOTT CABLE REIMBURSEMENT FOR COPY EXPENSES AND INVESTIGATION SERVICES OF FORREST OBERG IN CONNECTION WITH OIL AND GAS INVESTMENTS."

On October 15, 2009, respondent issued a notice of deficiency, disallowing deductions relating to the aforementioned payments and determining that the estate is liable for additions to tax for failure to timely file a return and timely pay tax. On January 13, 2010, Sheri, the executor and trustee, while residing in Missouri, filed a petition with this Court seeking review of respondent's determination.

---

[3]The estate calculated this amount by subtracting the $100,000 bequest to Mr. Lopez (i.e., pursuant to the First Trust) from the $575,000 settlement payment and adding the $23,113 of life insurance proceeds received by Mr. Lopez.

**[\*8]**                                             OPINION

The estate contends that the settlement payment to Mr. Lopez is deductible.[4]

Pursuant to section 2053(a)(3), a claim against an estate is deductible if it is

supported by adequate consideration and not attributable to the testator's

testamentary intent. See sec. 2053(c)(1)(A); Estate of Huntington v. Commissioner,

100 T.C. 313, 316 (1993), aff'd, 16 F.3d 462 (1st Cir. 1994); Estate of Lazar v.

Commissioner, 58 T.C. 543, 553 (1972); Estate of Pollard v. Commissioner, 52 T.C.

741, 745 (1969). The settlement payment to Mr. Lopez is not deductible because the

payment lacked adequate consideration and was consistent with decedent's

testamentary intent. See sec. 2053(c)(1)(A); Estate of Huntington v. Commissioner,

100 T.C. at 316; Estate of Lazar v. Commissioner, 58 T.C. at 553; Estate of Pollard

v. Commissioner, 52 T.C. at 745.

In support of his determination, respondent cites Estate of Huntington and

Estate of Lazar, where the Court concluded that settlement payments to

beneficiaries were not deductible. The estate contends that these cases are

_____

[4]Pursuant to sec. 7491(a), the estate has the burden of proof unless it
introduces credible evidence relating to the issue that would shift the burden to
respondent. See Rule 142(a). Our conclusions, however, are based on a
preponderance of the evidence, and thus the allocation of the burden of proof is
immaterial. See Martin Ice Cream Co. v. Commissioner, 110 T.C. 189, 210 n.16
(1998).

**[\*9]** distinguishable because the settlement payments were paid to family members. While the settlement payments in these cases were to family members, the Court's reasoning is equally applicable to cases involving nonfamily members. Decedent had a longstanding and extremely close relationship with Mr. Lopez, expressly provided that he would receive estate assets, and memorialized her testamentary intent in both the First Trust and the Second Trust. In addition, the superior court resolved the amount of estate assets that Mr. Lopez was entitled to receive, and the settlement payment was paid in full satisfaction of any claim relating to the First Trust or the Second Trust. Furthermore, on the estate tax return, the estate reported that Mr. Lopez was a beneficiary and the settlement payment was paid to settle title to beneficiaries. During decedent's lifetime Mr. Lopez was paid for the services he rendered, and no part of the settlement payment related to a claim for unpaid services. In short, Mr. Lopez's claim represented a beneficiary's claim to a distributive share of the estate rather than a creditor's claim against the estate. See Estate of Lazar v. Commissioner, 58 T.C. at 552.

The estate contends that the bequest to Mr. Lopez from the Second Trust was the result of undue influence, Mr. Lopez was entitled only to his bequest from

[*10] the First Trust, and $475,000[5] of the settlement payment is a deductible administration expense. The superior court resolved, and we will not revisit, issues relating to undue influence and the amount Mr. Lopez was entitled to receive. We, however, reject the estate's contention that the settlement payment is a deductible administration expense. See sec. 2053(a)(3). The estate does not cite any authority that the amount of a settlement payment to a beneficiary delineated in a testator's will is a deductible administration expense. Cf., e.g., sec. 20.2053-3, Estate Tax Regs. In desperation, the estate cites Pitner v. United States, 388 F.2d 651 (5th Cir. 1967), where an estate was allowed to deduct certain litigation costs as administration expenses. Pitner is distinguishable because it involved a challenge by individuals "with no legitimate interest in the estate whatsoever." See id. at 660. Moreover, Pitner is a Fifth Circuit case and therefore not binding authority. See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971). Although other beneficiaries did not want Mr. Lopez to receive estate assets, the testator named Mr. Lopez as a beneficiary in both the First Trust and the Second Trust. Mr. Lopez, therefore, had a legitimate interest in the estate. The estate further contends that the settlement payment is deductible

---

[5]The estate calculated this amount by subtracting the $100,000 bequest to Mr. Lopez (i.e., pursuant to the First Trust) from the $575,000 settlement payment.

**[*11]** because it was paid to preserve estate assets. See sec. 20.2053-3(d), Estate Tax Regs. In support of its contention, the estate cites Estate of Papson v. Commissioner, 73 T.C. 290 (1979), where an estate was allowed a deduction for a brokerage commission relating to estate assets. Estate of Papson involved an administration expense pursuant to section 20.2053-3, Estate Tax Regs., and is distinguishable because the payment was not to a beneficiary delineated in a testator's will.

The estate contends, but has failed to establish, that the $21,444 payment to Scott is a deductible administration expense. On the estate tax return, the estate described the payment as reimbursement for Mr. Oberg's investigation of decedent's oil and gas investments. Evidence presented at trial obfuscated, rather than clarified, Mr. Oberg's activities. The estate introduced Scott's signed and notarized declaration which stated that Mr. Oberg, who did not testify, provided legal services. Scott testified that Mr. Oberg was paid to monitor the trust litigation and investigate decedent's oil and gas investments. While Mr. Oberg, in a letter demanding payment for his services, stated that he and Scott had "discussed" investigating decedent's oil and gas investments, there is insufficient evidence to establish precisely what Mr. Oberg did. We are convinced, however, that Mr. Oberg was paid to protect Scott's interest in the estate and monitor the trust litigation. Therefore, the

[*12] estate's payment to Scott is not deductible.[6]  See Estate of Dutcher v. Commissioner, 34 T.C. 918, 923 (1960) (holding that expenses incurred by beneficiaries to protect their personal interests are not administration expenses); sec. 20.2053-3(a), (c)(3), Estate Tax Regs.  Respondent concedes that the estate may deduct its expenses relating to Mr. Caviola and a portion of its expenses relating to Mr. Eason and Sheri.[7]

The estate also contends that Mr. Lopez stole the proceeds of decedent's life insurance policy by changing the beneficiary designation and therefore the estate is entitled to deduct the value of the proceeds Mr. Lopez received as an administration expense.  Alternatively, the estate contends that it is entitled to exclude the value of those proceeds from decedent's gross estate.  Regardless of whether Mr. Lopez was entitled to these proceeds, the proceeds payable to Mr. Lopez are not expenses incurred in estate administration, and the estate is not entitled to a deduction.  See sec. 20.2053-3(a), Estate Tax Regs.  Furthermore, the value of the proceeds must be

_____

[6]On the estate tax return, the estate also described this payment as relating to the private investigator's copy expenses.  Because the private investigator was paid to protect Scott's personal interests, it is immaterial whether the private investigator incurred copy expenses.

[7]Deductions relating to payments made to Mr. Eason and Sheri are allowed to the extent conceded by respondent.

**[\*13]** included in decedent's gross estate because at the time of decedent's death she had an "incident of ownership" (i.e., the power to change beneficiaries) in the policy. See sec. 2042(2); Estate of Perl v. Commissioner, 76 T.C. 861, 863 (1981).

Respondent determined that the estate is liable for additions to tax for failure to timely file a return pursuant to section 6651(a)(1) and failure to timely pay tax pursuant to section 6651(a)(2). Paragraphs (1) and (2) of section 6651(a) provide that a taxpayer shall be subject to the additions to tax unless it is shown that such failures were due to reasonable cause and not willful neglect. The estate has established that there was confusion relating to whether Sheri could file the estate tax return but has not established that it exercised the requisite ordinary care and prudence to establish reasonable cause. See United States v. Boyle, 469 U.S. 241, 250-252 (1985); Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002); Estate of Cavenaugh v. Commissioner, 100 T.C. 407, 427 (1993), aff'd in part, rev'd in part on other grounds, 51 F.3d 597 (5th Cir. 1995); Estate of La Meres v. Commissioner, 98 T.C. 294, 324-325 (1992); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Sheri testified that Mr. Caviola advised her that she lacked authority to file the estate tax return, but Mr. Caviola was not a tax adviser and testified that he "never discussed taxes with her." Regardless of what advice Mr. Caviola actually

**[\*14]** provided, the estate has failed to establish that any reliance on his advice relating to filing of the estate tax return was justified. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. at 99 (stating that the taxpayer must establish that "[t]he adviser was a competent professional who had sufficient expertise to justify reliance"). Mr. Gronroos readily acknowledges that he told Sheri that "the estate tax return needed to be filed." After speaking with Mr. Caviola, Mr. Gronroos and Sheri concluded that she lacked authority to file the estate tax return, but she did not petition the superior court for the authority to do so, seek additional advice, or otherwise attempt to resolve the issue.[8] See Estate of Cavenaugh v. Commissioner, 100 T.C. at 427 (holding that an estate failed to establish reasonable cause where it did not timely petition the probate court for the appointment of an authorized representative to file an estate tax return). Respondent has established that the estate failed to timely file the estate tax return and timely pay tax. See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446 (2001). The estate's failures were due to willful neglect. See sec. 6651(a)(1) and (2); Boyle, 469 U.S. at 250-252; Neonatology Assocs., P.A. v. Commissioner, 115

---

[8]Mr. Caviola testified that petitioning for authority to file the estate tax return could have caused liability exposure, but there is no indication that this advice was provided to Sheri. Sheri did, however, seek and acquire court approval to have her travel expenses paid from estate assets.

**[*15]** T.C. at 99; <u>Estate of Cavenaugh v. Commissioner</u>, 100 T.C. at 427; <u>Estate of La Meres v. Commissioner</u>, 98 T.C. at 324-325; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Accordingly, we sustain respondent's determination.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.